**2023-1454**

# United States Court of Appeals
# for the Federal Circuit

ANDREA ELECTRONICS CORPORATION,

*Appellant,*

– v. –

APPLE INC.,

*Appellee.*

*On Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board in No. IPR2017-00626*

## BRIEF FOR APPELLANT

ANDREW P. ZAPPIA
TROUTMAN PEPPER HAMILTON
  SANDERS LLP
70 Linden Oaks, Suite 210
Rochester, NY 14625
(585) 270-2100
andrew.zappia@troutman.com

WILLIAM D. BELANGER
FRANK D. LIU
GWENDOLYN TAWRESEY
TROUTMAN PEPPER HAMILTON
  SANDERS LLP
High Street Tower
125 High Street, 19th Floor
Boston, MA 02110
(617) 204-5100
william.belanger@troutman.com
frank.liu@troutman.com
gwendolyn.tawresey@troutman.com

*Counsel for Appellant*

MAY 31, 2023

**RELEVANT CLAIMS OF U.S. PATENT NO. 6,363,345 B1**

1.  An apparatus for canceling noise, comprising:

> an input for inputting an audio signal which includes a noise signal;

> a frequency spectrum generator for generating the frequency spectrum of said audio signal thereby generating frequency bins of said audio signal; and

> a threshold detector for setting a threshold for each frequency bin using a noise estimation process and for detecting for each frequency bin whether the magnitude of the frequency bin is less than the corresponding threshold, thereby detecting the position of noise elements for each frequency bin.

4.  The apparatus according to claim 1, wherein said threshold detector sets the threshold for each frequency bin in accordance with a current minimum value of the magnitude of the corresponding frequency bin; said current minimum value being derived in accordance with a future minimum value of the magnitude of the corresponding frequency bin.

5.  The apparatus according to claim 4, wherein said future minimum value is determined as the minimum value of the magnitude of the corresponding frequency bin within a predetermined period of time.

6.  The apparatus according to claim 5, wherein said current minimum value is set to said future minimum value periodically.

7.  The apparatus according to claim 6, wherein said future minimum value is replaced with the current magnitude value when said future minimum value is greater than said current magnitude value.

8.  The apparatus according to claim 6, wherein said current minimum value is replaced with the current magnitude value when said current minimum value is greater than said current magnitude value.

9.  The apparatus according to claim 5, wherein said future minimum value is set to a current magnitude value periodically; said current-magnitude value being the value of the magnitude of the corresponding frequency bin.

Appx0038.

[inside cover]

# CERTIFICATE OF INTEREST

I certify the following information is accurate and complete to the best of my knowledge.

Date:  May 31, 2023                    /s/*William D. Belanger*
                                                     William D. Belanger

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.  _X_  None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.  _X_  None/Not Applicable |
| Andrea Electronics Corporation | | |
| | | |

**4. Legal Representatives.**  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

____  None/Not Applicable            ____  Additional pages attached

| | | |
|---|---|---|
| Andrew Schultz | Sean Gloth | |
| Griffin Mesmer | Pepper Hamilton LLP | |
| Bradley T. Lennie | | |

**5. Related Cases.**  Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal.  Do not include the originating case number(s) for this case.  Fed. Cir. R. 47.4(a)(5).  See also Fed. Cir. R. 47.5(b).

\_\_\_\_   None/Not Applicable          \_\_\_\_    Additional pages attached

| | | |
|---|---|---|
| Andrea Electronics Corporation v. Apple, Inc.<br>EDNY 2:16-cv-05220 | | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases.**  Provide any information required under Fed. R. App. P. 26(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

 _X_   None/Not Applicable          \_\_\_\_    Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ................................................................. i

TABLE OF AUTHORITIES .................................................................. vi

STATEMENT OF RELATED CASES ................................................... xi

JURISDICTIONAL STATEMENT ........................................................ 1

STATEMENT OF THE ISSUES ............................................................. 2

INTRODUCTION .................................................................................. 4

STATEMENT OF THE CASE ................................................................ 9

I.     THE RELEVANT TECHNOLOGY .............................................. 9

II.    THE RELEVANT PRIOR ART .................................................... 11

    A.     Hirsch ................................................................................ 11

    B.     Martin ................................................................................ 13

III.   THIS COURT'S PRIOR APPEAL DECISIONS, THE 626 REMANDS, AND THE REMAND DECISIONS ............................................. 16

    A.     This First IPR Decision And This Court's First Remand Decision ........................................................................... 16

    B.     The Second IPR Decision ................................................ 17

    C.     This Court's Remand Of The Second IPR Decision ......... 18

    D.     The Third IPR Decision ................................................... 19

IV.    SUMMARY OF ARGUMENT ..................................................... 23

    A.     The Board's Determination That Petitioner Met Its Burden Is Reversible Error ............................................................. 24

    B.     The Board's Rejection Of Andrea's Counterarguments Is Reversible Error ............................................................. 26

C.    The Board's Findings On How Hirsch And Martin Would Be Combined Are Unsupported By Substantial Evidence .......................29

ARGUMENT ...................................................................................30

STANDARD OF REVIEW ..............................................................30

V.    THE BOARD'S DETERMINATION THAT A POSITA WOULD HAVE BEEN MOTIVATED TO COMBINE HIRSCH AND MARTIN SHOULD BE REVERSED..........................................................................31

A.    The Board Erred In Failing To Analyze Martin And Hirsch As A Whole ................................................................................32

B.    The Board Erred In Finding Hirsch's Alleged Silence Regarding Non-Stationary Noise Is Sufficient To Establish Motivation To Combine ..............................................................................35

1.    The Board Makes No Findings of Fact on Hirsch's Silence, Having Assumed No Dispute.......................................36

2.    Hirsch's Alleged Silence on Non-Stationary Noise Cannot Establish a Motivation to Combine ..........................................37

3.    The Board's Decision Is Arbitrary and Capricious .................39

VI.    THE BOARD IMPERMISSIBLY SHIFTED THE BURDEN TO ANDREA, DOES NOT ADDRESS THE ISSUES REQUIRED BY THIS COURT'S REMAND, AND ITS FINDINGS ARE NOT SUPPORTED BY SUBSTANTIAL EVIDENCE ......................................................................41

A.    The Board Failed To Analyze All Evidence Of Record .....................42

B.    The Board Erred In Finding That Hirsch Shows A Need For Improvement In Non-Stationary Noise Environments And Whether Martin Provides Such Improvement (Third IPR Decision § C.1)......................................................................44

1.    The Board's Finding That Hirsch Needs Improvement Misstates the Record, Ignores Evidence Presented by Andrea, and is Internally Inconsistent .......................................44

iv

2. The Board's Determination that Martin Provides the Improvement Is Not Supported by Substantial Evidence .........46

C. The Board Erred In Its Determination That Hirsch Does Not Disparage Martin When It Found The Differences In Length Of Past Segments Of Noisy Speech Insignificant (Third IPR Decision at § C.2) .................................................................................49

1. The Board's Determination that Hirsch May Not be Referring to Martin in Its Discussion of "Relatively Long Past Segments of Noisy Speech" Has No Support and Violates the APA .....................................................................50

2. The Board Improperly Shifted the Burden of Proof to Andrea in Assessing Whether the Time Difference in Past Segments Between Hirsch and Martin is Significant ...............54

D. The Board's Rejection Of Andrea's Argument That Hirsch Obviates The Need To Address Speech Pause Detection Is Arbitrary And Capricious (Third IPR Decision at § C.3) ...................57

VII. HOW THE TEACHINGS OF HIRSCH AND MARTIN ARE COMBINED WAS PART OF THE REMAND ................................................................59

CONCLUSION .........................................................................................63

ADDENDUM ............................................................................................65

INDEX ......................................................................................................66

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
694 F.3d 1312 (Fed. Cir. 2012) ....................................................58

*Apple Inc. v. Samsung Elecs. Co.*,
839 F.3d 1034 (Fed. Cir. 2016) (*en banc*) .....................................50

*Arendi S.A.R.L. v. Apple Inc.*,
832 F.3d 1355 (Fed. Cir. 2016) ....................................................41

*Ashland Oil, Inc. v. Delta Resins & Refractories, Inc.*,
776 F.2d 281 (Fed. Cir. 1985) ......................................................34

*Bausch & Lomb, Inc. v. Barnes-Hind/Hydrocurve, Inc.*,
796 F.2d 443 (Fed. Cir. 1986) ..............................................33, 50

*Belden Inc. v. Berk-Tek LLC*,
805 F.3d 1064 (Fed. Cir. 2015) ............................... 24, 29, 31, 52, 54, 55, 56

*Consol. Edison Co. v. NLRB*,
305 U.S. 197 (1938) ....................................................................31

*Corning v. Fast Felt Corp.*,
873 F.3d 896 (Fed. Cir. 2017) ......................................................24

*DSS Tech. Mgmt. v. Apple Inc.*,
885 F.3d 1367 (Fed. Cir. 2018) ....................................................41

*Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.*,
800 F.3d 1375 (Fed. Cir. 2015) ....................................................35

*Ericsson Inc. v. Intellectual Ventures I LLC*,
901 F.3d 1374 (Fed. Cir. 2018) ....................................................31

*Google LLC v. Ji-Soo Lee*,
   759 Fed. Appx. 992 (Fed. Cir. 2019) ............................................................23

*Graham v. John Deere Co.*,
   383 U.S. 1 (1966)......................................................................................33, 34

*Hamilton Beach Brands, Inc. v. F'Real Foods, LLC*,
   908 F.3d 1328 (Fed. Cir. 2018) ...............................................................52, 56

*Honeywell Int'l Inc. v. Mexichem Amanco Holding S.A. DE C.V.*,
   865 F.3d 1348 (Fed. Cir. 2017) .......................................................................41

*In re Cyclobenzaprine*,
   676 F.3d 1063 (Fed. Cir. 2012) ...............................................................27, 42

*In re Gartside*,
   203 F.3d 1305 (Fed. Cir. 2000) .......................................................................47

*In re Magnum Oil Tools Int'l, Ltd*,
   829 F.3d 1364 (Fed. Cir. 2016) ......................... 25, 27, 35, 38, 42, 44, 50, 51

*In re Mercer*,
   515 F.2d 1161 (CCPA 1975)............................................................................33

*In re Mouttet*,
   686 F.3d 1322 (Fed. Cir. 2012) ...............................................................30, 31

*In re Nuvasive*,
   842 F.3d 1376 (Fed. Cir. 2016) .......................................................................19

*In re Sang Su Lee*,
   277 F.3d 1338 (Fed. Cir. 2002) .......................................................................25

*In re Stepan Co.*,
   868 F.3d 1342 (Fed. Cir. 2017) .......................................................................58

*In re Warsaw Orthopedic, Inc.*,
   832 F.3d 1327 (Fed. Cir. 2016) ...................................................................5, 34

vii

*In re Wesslau,*
    353 F.2d 238 (CCPA 1965) ........................................................... 33

*Intellectual Ventures I LLC v. Motorola Mobility LLC,*
    870 F.3d 1320 (Fed. Cir. 2017) .............................................. 48, 53

*Intelligent Bio-System, Inc. v. Illumina Cambridge Ltd.,*
    821 F.3d 1359 (Fed. Cir. 2016) ................................................... 63

*Kennametal, Inc. v. Ingersoll Cutting Tool Co.,*
    780 F.3d 1376 (Fed. Cir. 2015) ................................................... 30

*KSR Int'l Co. v. Teleflex Inc.,*
    550 U.S. 398 (2007) ................................................ 17, 18, 38, 53

*Meiresonne v. Google, Inc.,*
    849 F.3d 1379 (Fed. Cir. 2017) ................................................... 30

*OSI Pharms., LLC v. Apotex Inc.,*
    939 F.3d 1375 (Fed. Cir. 2019) ................................................... 46

*Panduit Corp. v. Dennison Mfg. Co.,*
    810 F.2d 1561 (Fed. Cir. 1987) ................................................... 34

*Personal Web Techs., Inc. v. Apple, Inc.,*
    848 F.3d 987 (Fed. Cir. 2017) ..................................................... 63

*PersonalWeb Techs., Inc. v. Apple, Inc.,*
    917 F.3d 1376 (Fed. Cir. 2019) .......................................... 26, 38, 48

*Plas-Pak Indus., Inc. v. Sulzer Mixpac AG,*
    600 Fed. App'x 755 (Fed. Cir. 2015) ........................................... 59

*Polaris Indus., Inc. v. Arctic Cat, Inc.,*
    882 F.3d 1056 (Fed. Cir. 2018) .......................................... 26, 30, 34

*PPC Broadband, Inc. v. Iancu,*
    739 Fed. App'x 615 (Fed. Cir. 2018) ........................................... 55

*Robert Bosch, LLC v. Iancu*,
    778 Fed. App'x 871 (Fed. Cir. 2019) ............................................46

*Rovalma, S.A. v. Bohler-Edelstahl GmbH & Co. KG*,
    856 F.3d 1019 (Fed. Cir. 2017) ............................................52, 56

*Samsung Elecs. Co. v. Elm 3DS Innovations, LLC*,
    925 F.3d 1373 (Fed. Cir. 2019) ....................................................63

*Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*,
    655 F.3d 1364 (Fed. Cir. 2011) ....................................................53

*Tech. Licensing Corp. v. Videotek, Inc.*,
    545 F.3d 1316 (Fed. Cir. 2008) ....................................................35

*TQ Delta, LLC v. CISCO Sys., Inc.*,
    942 F.3d 1352 (Fed. Cir. 2019) ..................................26, 29, 38, 49

*TriVascular, Inc. v. Samuels*,
    812 F.3d 1056 (Fed. Cir. 2016) ....................................................44

*Vicor Corp. v. SynQor, Inc.*,
    869 F.3d 1309 (Fed. Cir. 2017) ............................................31, 40

## CODES, STATUTES, RULES

5 U.S.C. § 554(b)(3) .................................................................47, 52, 55

5 U.S.C. § 554(c) ...........................................................................52, 56

5 U.S.C. § 556(d) ...........................................................................52, 56

5 U.S.C. § 706(2) ................................................................................31

5 U.S.C. § 706(2)(A) ..........................................................................41

28 U.S.C. § 1295(a)(4)(A) ....................................................................1

35 U.S.C. § 314 ....................................................................................1

35 U.S.C. § 314(a) .................................................................................................55

35 U.S.C. § 316(e) ............................................................................................35, 55

35 U.S.C. § 319 ......................................................................................................1

## STATEMENT OF RELATED CASES

This appeal arises from a remand proceeding before the U.S. Patent and Trademark Office Patent Trial and Appeal Board ("Board"), regarding *Inter Partes* Review ("IPR") proceeding No. IPR2017-00626 (the "626 IPR"), filed against U.S. Patent No. 6,363,345 ("the '345 Patent") by Appellee Apple Inc. ("Petitioner"). Petitioner also filed another IPR proceeding against the '345 Patent, proceeding No. IPR2017-00627 (the "627 IPR"). On July 12, 2018, the Board issued Final Written Decisions in the 626 IPR (Paper 28) and the 627 IPR (Paper 23) (respectively, the "First IPR Decision" and the "627 IPR Decision").

The First IPR Decision and the 627 IPR Decision were appealed to this Court. On February 7, 2020, this Court issued a decision in Appeal Nos. 2018-2382 and 2018-2383 relating to the 626 IPR and the 627 IPR. *Apple Inc. v. Andrea Electronics Corp.*, 949 F.3d 697 (Fed. Cir. 2020) (hereafter *Andrea I*). *Andrea I*, *inter alia*, remanded the 626 IPR back to the Board for consideration of whether claims 6-9 of the '345 Patent are rendered obvious by a combination of the Hirsch and Martin references (defined below) (the "First Remand"). In connection with the First Remand, on October 28, 2020, the Board issued its Judgment Final Written Decision on Remand Determining Challenged Claims 6-9 Are Unpatentable (the "Second IPR Decision"). On November 13, 2020, Appellant Andrea Electronics Corporation ("Andrea") appealed the Second IPR Decision to this Court and on April 22, 2022,

this Court issued a decision in Appeal No. 2021-1248, affirming the Board's decision that Martin discloses the limitations of claim 9 of the '345 Patent but remanded the 626 IPR back to the Board for consideration of whether there was a motivation to combine Hirsch and Martin with respect to claims 6-9. *Andrea Electronics Corp. v. Apple, Inc.*, No. 2021-1248, 2022 WL 1197341, at *4 (Fed. Cir. Apr. 22, 2022) (unpublished) (hereafter *Andrea II*). On November 29, 2022, the Board issued its Judgment Final Written Decision Determining Challenged Claims 6-9 Are Unpatentable (the "Third IPR Decision"), which is appealed here.

The '345 Patent is asserted in a related pending litigation captioned *Andrea Electronics Corporation v. Apple Inc.*, Case No. 2:16-cv-05220 (E.D.N.Y.), which has been stayed pending this appeal.

## JURISDICTIONAL STATEMENT

This appeal arises from the 626 IPR.  The Board had jurisdiction over the 626 IPR under 35 U.S.C. § 314 and issued the Third IPR Decision regarding the '345 Patent on November 29, 2022, which is a final and appealable decision.  Appx0001-0019.

This Court has jurisdiction under 35 U.S.C. § 319 and 28 U.S.C. § 1295(a)(4)(A).

## STATEMENT OF THE ISSUES

(1)    Did the Board err by: (a) assuming that Andrea does not dispute that Hirsch "specifically identifies Martin as a solution to th[e] problem" of "speech pause detection to estimate noise … particularly in non-stationary noise settings" when Andrea expressly contested that; and (b) relying on Hirsch's purported silence about non-stationary noise as the basis for its determination that it would have been obvious to combine Martin with Hirsch?

(2)    Did the Board err in its assessment of Andrea's evidence that there is no motivation to combine?  In particular:

(a) did the Board err in failing to consider any of Andrea's arguments and evidence other than those identified as examples by this Court in its *Andrea II* decision?

(b) did the Board err in finding that Hirsch shows a need for improvement in non-stationary noise environments by impermissibly relying on a reference's silence to prove motivation to combine and by shifting the burden of proof to Andrea after rejecting the evidence from both parties?

(c) did the Board err in determining that Hirsch does not disparage Martin by creating a new argument not raised by any party in violation of the Administrative Procedure Act, impermissibly serving as its own expert witnesses after rejecting the evidence presented by both parties, and

2

inconsistently interpreting Hirsch and Martin in an arbitrary and capricious manner?

(d) did the Board err by failing to answer this Court's question on remand about whether Hirsch obviates the need to address speech pause detection by relying on irrelevant and conclusory testimony from Petitioner?

**INTRODUCTION**

This Court remanded to the Board with clear instructions: to make specific findings on "why a skilled artisan would have specifically incorporated Martin's noise power estimation algorithm into Hirsch's spectral subtraction system or threshold calculation." Appx1976-1977. Rather than consider the record evidence on that issue, the Board's Third IPR Decision assumes away the central issue, relying on the false premise that "there is no dispute that Hirsch … specifically identifies Martin as a solution" to the "problem of speech pause detection to estimate noise … particularly in non-stationary noise settings." The Board cites to no record evidence to support this assertion and Andrea has disputed this contention in every paper filed since the beginning of this IPR. *See, e.g.*, Appx0673-0677, Appx0764-0767, Appx0843-0844, Appx1984-1985. While Hirsch does reference Martin, it does so only to explain that Martin's teachings are different and insufficient. Appx0448. Tellingly, the Board's discussion on whether Petitioner met its burden relies only on Hirsch's reference to Martin, omitting any discussion whatsoever of Hirsch's discussion of the "disadvantage" of known approaches from the very next sentence. This violates the long-standing requirement that the Board consider the prior art references as a whole.

The only section where the Board addresses Hirsch's discussion of "disadvantage[s]" is in its determination of whether Andrea has rebutted Petitioner's

4

arguments. This is improper and is not form over substance. The Board cannot cherry pick portions of Hirsch to find that Petitioner met its burden, then require Andrea to disprove Petitioner's case. Rather, the Board must consider the teachings of the references as a whole. *See, e.g.*, *In re Warsaw Orthopedic, Inc.*, 832 F.3d 1327, 1332 (Fed. Cir. 2016). Selective reliance on only portions of a reference invites improper hindsight bias – which is exactly what the Board did here.

Having accepted that Petitioner met its burden of proving motivation to combine, the Board addressed what it called Andrea's "[r]ebuttal" arguments. In doing so, the Board first erred by considering only the exemplary arguments that this Court identified in its *Andrea II* decision. Appx0007-0014. It ignored the other evidence that Andrea advanced to show lack of motivation to combine. To the extent that the Board was confused about what Andrea's actual arguments were, Andrea provided as much clarity as the Board would allow. Andrea requested briefing on remand, but the Board permitted only the submission of a list of citations. Each of the additional arguments that the Board failed to address are plainly advanced within the citations on Andrea's list.

Further, the Board's analysis of this Court's three exemplary arguments furthermore contains numerous errors, including misconstruing the record, shifting the burden to Andrea, reaching internally inconsistent conclusions, and failing to support findings with substantial evidence. First, the Board addressed whether

Hirsch shows a need for improvement and whether Martin provides that improvement. The Board found, incorrectly, that all parties agree that Hirsch is silent on its performance in non-stationary noise. Andrea disputes this contention and the Board cited to no evidence other that a purported agreement to support it. But, even if the Board properly determined that Hirsch is silent on non-stationary noise, it gives no explanation for why *silence* establishes the *existence* of a motivation to combine, nor does it cite to any supporting authority. It cannot be that any reference that is silent on its performance in a particular setting can be combined with another reference that describes that setting. Such a finding would eviscerate the motivation to combine requirement.

Second, the Board addresses whether Andrea proved that Hirsch disparages Martin. It finds that there is no disparagement because Hirsch may not have been referring to Martin when it discussed "disadvantage[s]." The Board cites to nothing in the record to support this speculative finding. Further, no party raised this argument, meaning the Board's reliance on it violates the Administrative Procedure Act ("APA") by depriving Andrea of the opportunity to develop a record against it. Regardless, the evidence of record undermines the Board's finding, since *both parties'* experts agree that Hirsch is referring to Martin in discussing "disadvantage[s]" of known "approaches."

Third, this Court asked the Board to make specific findings of fact on whether Andrea proved that Hirsch obviates the need to address speech pause detection. The Board finds in Petitioner's favor, citing only conclusory and irrelevant evidence in support. Specifically, it relies on Petitioner's expert's statement that "techniques addressing particular challenges or issues … are routinely added to or used to modify an existing noise reduction scheme." Appx0014 (quoting Appx0108). This has nothing to do with obviating the need for speech pause detection and, as such, does not answer the question on remand.

Finally, the Board found that Andrea had not shown that Hirsch and Martin could not be combined in a manner that would work for its intended purpose. Appx0015-0016. In doing so, the Board shifted the burden of proof to Andrea to "allege [] specific fault in the Petition," rather than holding Petitioner to its burden of proof. Further, the Board errs in ignoring most of the evidence that Andrea put into the record to show that Petitioner had not proven how Hirsch and Martin could be combined, other than impermissibly relying on the claims as a roadmap.

The Board's analysis strikes out on its third attempt to find a motivation to combine Hirsch with Martin. This Court should reverse and find the claims not unpatentable. Remand, while sought in the alternative, is not sufficient. This Court remanded with instructions to make findings of fact on motivation to combine.

Where, as here, the evidence of record cannot support a motivation to combine,
reversal of the Board's decision is appropriate.

## STATEMENT OF THE CASE

## I.    THE RELEVANT TECHNOLOGY

The '345 Patent discloses inventions that, among other things, break an audio signal into its constituent frequency components, called "frequency bins," using a "frequency spectrum generator," for example, a Fast Fourier Transform (FFT). Appx0034, Appx0817.  The claimed inventions can detect and cancel noise on a frequency-bin-by-frequency-bin basis by setting an "adaptive threshold" for each frequency bin, which is used to delineate noise from the desired signal (*e.g.*, speech). Appx0035-0036, Appx0817.

Adaptive thresholds are set based on the magnitude characteristics of the samples within each bin.  Appx0036, Appx0817.  The inventions described in the '345 Patent and claimed in claims 6-9 set the threshold using a cascading minimum determination process.  Appx0817.  "In the threshold determination process, for each frequency bin, two minimum values are calculated," a "current minimum" and a "future minimum."  Appx0036, Appx0817-0818.  "The current minimum value is used by the [noise] subtraction process, while the future minimum is used for the initiation and refreshing of the current minimum."  Appx0036, Appx0817-0818.

First, a "future minimum" is determined as the minimum magnitude of the frequency bin for a given period of time.  Appx0036, Appx0817-0818.  In an example embodiment, this period is "5 seconds."  Appx0036, Appx0817-0818.

Each time this five-second period elapses, the "future minimum" value is used to initiate the "current minimum" parameter to be used for the next five-second period. Appx0036, Appx0817-0818.

Over each five-second period for which it is initiated, the "current minimum" is compared to each sample in the frequency bin over that period, and its value is updated whenever the magnitude of a sample in the frequency bin is less than the "current minimum's" value.  Appx0036, Appx0817-0818.



Noise Estimation Process

**FIG. 3**

Appx0026. As illustrated in Figure 3, for each five-second period, the "current minimum" value for that frequency bin is ultimately determined as the smallest magnitude value within the frequency bin corresponding to that period.

After each such five-second period has elapsed, the "current minimum" is once again "initiated ... with the value of the future minimum that was determined over the previous 5 seconds," and the current minimum value is used to set the "threshold." Appx0036, Appx0817-0818. In the preferred embodiment, the minimum is scaled by a factor of 4, and this scaled minimum ("4*Min") serves as the threshold. Appx0036, Appx0026, Appx0818.

The threshold detector then compares the set threshold to the actual magnitude of the signal. Appx0036, Appx0818. Where the magnitude of the signal is less than the threshold, the noise estimate is updated using the magnitude value ("New Data"). Appx0026, Appx0818. The updated noise estimate is then used in the subtraction process to cancel noise from the signal. Appx0036-0037, Appx0818.

## II.    THE RELEVANT PRIOR ART

### A.    Hirsch

Hirsch discloses a noise estimation technique that does not require an explicit speech pause detection. Appx0448, Appx0451. Hirsch acknowledges that while noise estimation techniques without explicit speech pause detection were known in the art, they suffered from the "disadvantage" of "the need of relatively long past

segments of noisy speech." Appx0448. Hirsch specifically identifies Martin as one of these known noise estimation techniques with that "disadvantage." Appx0448, Appx0451 (citing article [6], which corresponds to Martin).

Hirsch seeks to overcome the disadvantage of the previously known noise estimation techniques (*i.e.*, Martin), by proposing two techniques to estimate noise characteristics for noisy speech signals. Appx0448-0449, Appx0820-0821. Hirsch's first technique involves an algorithm that calculates noise magnitude levels for each frequency subband using adaptive thresholds. Appx0448, Appx0820-0821. Hirsch's second technique evaluates the histograms of past spectral magnitude values corresponding to noise segments in signal subbands, taking the maximum as a noise magnitude level estimation. Appx0449, Appx0821.

Hirsch avoids the need for these long past segments through a simple recursive accumulation of the signal power until the signal power exceeds the adaptive threshold. Appx0448-0449, Appx0820-0821. When the threshold is exceeded, Hirsch stops the recursive accumulation of signal power, thus providing an estimate of the noise level. Appx0448-0449, Appx0820-0821. In other words, Hirsch's noise estimate is derived by measuring the signal power during a period when no speech is detected. Appx0448-0449. This allows Hirsch's technique to operate with only "[p]ast noisy segments of just about 400 ms duration" for the noise estimate. Appx0448.

12

Petitioner concedes that Hirsch does not disclose the claimed "current minimum" and "future minimum" limitations of claims 4-9.   Appx0104-0105, Appx1953-1959.

## B.    Martin

As noted in Hirsch, Martin describes a noise reduction technique that "avoid[s] the problem of speech pause detection" but has the "disadvantage" of needing "relatively long past segments of noisy speech."   Appx0448.   Unlike Hirsch's simple noise reduction technique, Martin's algorithm uses a complex noise estimation process to compute signal-to-noise ratio values in the multiple subwindow context.   Appx0453, Appx0822.   Martin's algorithm tracks varying noise power levels during speech activity and achieves its stated improvement by distinguishing between conditions where the noise signal's power **is not** monotonically increasing (*i.e.*, slowly varying) and conditions where the signal's power **is** monotonically increasing (*i.e.*, rapidly varying).   Appx0452-0453, Appx0822-0826.   Martin is able to distinguish between these two noise cases by using a window of length L divided into additional windows, or subwindows. Appx0453, Appx0822.   Martin provides an example of how its algorithm works using four subwindows (W=4).  Appx0453.  For each incoming subwindow, Martin determines the minimum sample power value across the subwindow.  Appx0453. The minimum sample power value for the subwindow is determined by comparing

the incoming sample power values against $P_{Mmin}$, which is the current minimum power value for the current subwindow.  Appx0453.

Martin's algorithm determines noise estimates in different ways depending on whether the signal is or is not monotonically increasing, as shown in the purple and red boxes in annotated Figure 2 from Martin:



Figure 2:  Flowchart of the SNR estimation algorithm

Appx0823, Appx0453 (annotated).   If the noise signal power is monotonically increasing (*i.e.*, rapidly varying), Martin's noise estimate is determined by taking the

minimum power value over the previous subwindow. Appx0453, Appx0824. However, if the noise signal power is not monotonically increasing (*i.e.*, slowly varying), then Martin's noise estimate is determined by taking the minimum power value over the previous window (which consists of multiple subwindows). Appx0453, Appx0823-0824. This multiple subwindow approach is more complex, and as noted in Hirsch, is disadvantageous because it requires relatively long past segments of noisy speech. Appx0448, Appx0840-0843.

Martin specifically found that "a window length of 0.625 s is a good value." Appx0453, Appx0829. In arriving at this optimum window length, Martin noted that "[t]he window length $L = M * W$ must be large enough to bridge any peak of speech activity, but short enough to follow non stationary noise variations." Appx0453, Appx0829. This 0.625 second window length provides a sufficient number of data points to allow Martin's algorithm to determine the behavior of the noise signal (*e.g.*, whether it is slowly or rapidly varying). *See* Appx0829, Appx0453.

Martin observes that its signal-to-noise ratio (SNR) "is biased when no speech is present." Appx0454. As a result, Martin's algorithm is "accurate for medium to high SNR conditions but necessarily biased when no speech is present." Appx0455. In other words, Martin acknowledges inaccuracy in its SNR estimate when no speech is present. Appx0844.

Lastly, Martin notes that its noise suppression "is limited" because its algorithm "subtract[s] slightly biased noise power estimates (ofactor = 1.5)." Appx0455.

## III. THIS COURT'S PRIOR APPEAL DECISIONS, THE 626 REMANDS, AND THE REMAND DECISIONS

### A. This First IPR Decision And This Court's First Remand Decision

This Court reviewed the Board's First IPR Decision where the Board found, *inter alia*, that claims 6-9 were patentable over Hirsch and Martin. Appx1778-1800. In particular, the Board found claims 6-9 are patentable because it found that a POSITA would not have been motivated to combine Hirsch with Martin in the manner originally proposed by Petitioner, where Martin was configured to use only a single subwindow (W=1). Appx1731-1738.

This Court reversed, finding that Petitioner's multiple subwindow scenario for Martin was not improperly raised for the first time in Petitioner's Reply Brief and remanded for the Board to consider the combination of Hirsch with Martin's multiple subwindow scenario and whether that combination rendered obvious claims 6-9 of the '345 Patent. Appx1791-1794.

On remand, the parties submitted simultaneous opening briefs (Appx1822-1836, Appx1854-1868) directed to the patentability of claims 6-9, responsive briefs (Appx1869-1878, Appx1879-1887), and supplemental briefing (Appx1892-1897, Appx1936-1941) focused on claim 9. Those briefs discussed whether a POSITA

would have been motivated to replace Hirsch's simple noise estimation algorithm with Martin's complex multiple subwindow noise floor estimator and whether that combination of Hirsch and Martin rendered obvious claims 6-9. The parties did not request, and the Board did not authorize, the submission of any new evidence in the remand proceeding. Appx1890.

### B.    The Second IPR Decision

On remand, the Board found claims 6-9 unpatentable in view of the combination of Hirsch and Martin in the multiple subwindow scenario. In particular, the Board found that a POSITA would have combined Hirsch and Martin because the Board, along with this Court, had already resolved that issue. Appx1959. The Board relied on a single conclusory sentence from its First IPR Decision noting that "'one skilled in the art would have considered Martin's teachings, generally, when reviewing the teachings of Hirsch, as Martin is specifically referenced in Hirsch itself.'" Appx1959 (citing Appx1735). The Board went on to explain that "[t]o the extent Patent Owner's contentions regarding Petitioner's rationale to combine the teachings of Martin with those of Hirsch are still at issue, we agree with Petitioner that one skilled in the art would have considered using the multiple subwindow approach taught by Martin in Hirsch's system." Appx1959. The Board cited to nothing to support this finding. Appx1959. It went on to quote *KSR International Co. v. Teleflex Inc.*, for the general proposition that "'[w]hen a work is available in

one field, design incentives and other market forces can prompt variations of it, either in the same field or in another.'"  Appx1959 (quoting 550 U.S. 398, 401 (2007)).  However, the Board made no findings on design incentives or other market forces.

## C.    This Court's Remand Of The Second IPR Decision

This Court reversed and remanded the Board's Second IPR Decision finding claims 6-9 unpatentable in view of the combination of Hirsch and Martin. Appx1968-1969.  Specifically, this Court found that the Board failed to address the motivation to incorporate Martin's noise estimation algorithm into Hirsch's spectral subtraction system:

> Hirsch does refer to Martin as a known approach to avoid the problem of speech pause detection to estimate noise and, based on that, it was reasonable for the Board to find that a skilled artisan would have considered Martin's teachings generally when reviewing Hirsch.  But neither the Board nor this court addressed why a skilled artisan would have specifically incorporated Martin's noise power estimation algorithm into Hirsch's spectral subtraction system or threshold calculations.…In addition, neither the Board nor this court addressed any of the specific motivation issues contested by Andrea. These include, for example, whether: Hirsch shows a need for improvement in nonstationary noise environments and whether Martin provides such improvement…; Hirsch obviates the need to address the speech pause detection problem and, therefore, a skilled artisan would not have looked to Martin to address the problem, … and Hirsch disparages Martin because of "the need of relatively long past segments of noise speech" and the "significant

> difference" in time requirements between Martin and Hirsch.

Appx1976-1977 (citation omitted). This Court further found that the Board's analysis of "design incentives" and "other market forces," as well as its conclusion that Hirsch did not teach away from Martin, were also insufficient because the Board made no factual findings. Appx1977 (citing *In re Nuvasive*, 842 F.3d 1376, 1383 (Fed. Cir. 2016)).

### D. The Third IPR Decision

On remand, Andrea and Petitioner requested the ability to submit additional briefing to address Petitioner's purported motivation to combine Hirsch and Martin. Appx1981. The Board denied this request, permitting the parties only to submit authorized citation lists, identifying the portions of the record that the Board should consider. Appx1981. Andrea cited to its discussion of a lack of motivation to combine in its Patent Owner Response and Sur-Reply, the First IPR Decision (finding no motivation to combine), Andrea's briefing after this Court's First Remand, and this Court's *Andrea II* decision. Appx1984-1985.

In its Third IPR Decision, the Board recognized that this Court remanded for the Board to "'address[] why a skilled artisan would have specifically incorporated Martin's noise power estimation algorithm into Hirsch's spectral subtraction system or threshold calculation' and to 'address[] any of the specific motivation issues contested by [Andrea].'" Appx0004 (citing Appx1976-1977). The Board further

recognized that its task on remand was to "make specific fact findings related to *whether/why* Martin's noise power estimation algorithm would have been incorporated into Hirsch." Appx0004.

The Board first found that Petitioner had met its burden of proving that a POSITA would have been motivated to combine Hirsch with Martin. Appx0005-0006. The Board based its determination on an incorrect assumption that "there is no dispute that Hirsch specifically identifies the problem of speech pause detection to estimate noise, and specifically identifies Martin as a solution to that problem, particularly in non-stationary noise settings." Appx0005. Andrea strenuously disputes this proposition because, the sentence after Hirsch references Martin, Hirsch explains that the "disadvantage of most approaches is the need of relatively long past segments of noisy speech." Appx0448. Without discussing this explanation from Hirsch, the Board found that Martin supports a motivation to combine because Martin "discuss[es] testing of the algorithm in non-stationary noise settings and conclud[es] that the arrangement 'provides a computational[ly] inexpensive and effective mean to cope with th[e] problem.'" Appx0005 (quoting Appx0455). The Board's understanding of Martin is incorrect because "th[e] problem" that Martin is actually referring to is not non-stationary noise, but rather "varying noise levels." Appx0455. The Board found that Hirsch likewise supports a finding of motivation to combine because "there is no dispute that Hirsch is silent

as to the effectiveness of its technique in non-stationary noise environments." Appx0005 (citing Appx0108, Appx0449, Appx0776, Appx0843-0844, Appx1861). None of the citations from the Board supports that there is such agreement. In fact, this is a misrepresentation of Andrea's longstanding position, which is that: "[n]either [Petitioner] nor its expert provides any basis as to why a skilled artisan would understand that the techniques described in Hirsch would have needed to be improved upon for use in non-stationary noise environments." Appx0766 (citing Appx0843-0844).

The Board then analyzed what it called Andrea's "[r]ebuttal" arguments. Appx0007-0014. The Board first rejected Andrea's argument that Hirsch does not show a need for improvement, reiterating that Andrea agreed that Hirsch is "silent" on non-stationary noise. Appx0007. Finding that silence showed the need for an improvement (Appx0007), the Board then determined that Martin provided the improvement that Hirsch needed. Appx0007-0008. In support, the Board reiterated its finding that Martin's algorithm is capable of tracking "non[-]stationary noise signals and has a low computational complexity." Appx0007 (citing Appx0452). The Board rejected the evidence from Andrea's expert that Martin does not provide an improvement because Martin itself states that his "estimate is biased when no speech is present" and that his "algorithm is accurate for medium to high SNR conditions but necessarily biased when no speech is present." Appx0008-0009

(quoting Appx0843-0844).  In doing so, the Board misunderstood Martin's teachings about a "slight[ly] biased noise power estimate" with its discussion that the algorithm is "necessarily biased when no speech is present."  *Compare* Appx0009 *with* Appx0455.

Second, the Board rejected Andrea's argument that Hirsch disparages Martin.  Appx0009-0013.  The Board first found that Hirsch's discussion of the "disadvantage[]" of the "need for relatively long past segments of noisy speech" only applies to "*most* approaches" and thus may not be referring to Martin.  Appx0009-0010 (quoting Appx0448).  No party ever raised this argument.  In fact, both parties agree that Hirsch is referring to Martin in its discussion of "disadvantages."  Appx0401, Appx1001.  The Board then assessed the parties' competing expert testimony regarding whether a 225 millisecond difference in past segments of noisy speech between Hirsch and Martin's algorithms is significant.  Appx0010-0011.  The Board rejected the evidence from both parties.  Appx0010-0011.  But rather than finding that this means Petitioner did not meet its burden, the Board found that it could substitute its own judgment on significance.  Appx0010-0011.  Finally, the Board found that it had no evidence that would allow it to "to compare Hirsch and Martin with respect to effectiveness in noise settings" but that a POSITA would have appreciated the tradeoffs between the two techniques, citing Petitioner's expert's conclusory testimony.  Appx0012-0013.

Third, the Board rejected Andrea's argument that Hirsch developed an algorithm that did not need speech pause detection and thus POSITA would not have combined it with Martin to address problems of speech pause detection.  Appx0013-0014.  In doing so, the Board relied entirely on conclusory testimony from Petitioner's expert on the irrelevant point that "[t]he practices followed by the Hirsch authors is consistent [with] the general approach followed by those working in the field of noise reduction, where techniques addressing particular challenges or issues (e.g., noise reduction in nonstationary sound environment) are routinely added to or used to modify an existing noise reduction scheme."  Appx0014 (quoting Appx0108 (citing Appx0399-0400)).

Finally, the Board assessed how Hirsch and Martin could be combined, in case that issue remained on appeal.  The Board incorrectly determined that Andrea had not alleged fault in the combination presented in the Petition.  Appx0015.  In doing so, the Board ignores significant portions of Andrea's papers filed below.

## IV.    SUMMARY OF ARGUMENT

Where, as here, the record does not contain evidence sufficient to support a finding of obviousness, reversal – not remand – is appropriate.  *See, e.g.*, *Google LLC v. Ji-Soo Lee*, 759 Fed. Appx. 992, 996 (Fed. Cir. 2019) (holding reversal, not remand, is appropriate when the record makes clear that the Board's holding is not supported by substantial evidence) (citing *Corning v. Fast Felt Corp.*, 873 F.3d 896,

901-09 (Fed. Cir. 2017) (reversing, rather than remanding, when "only one answer is supported by substantial evidence") & *Belden Inc. v. Berk-Tek LLC*, 805 F.3d 1064 (Fed. Cir. 2015) (reversing, rather than remanding, when "the record is one-sided")).  After three tries, Petitioner and the Board have failed to articulate actual facts that show that a POSITA would have been motivated to combine Hirsch with Martin without the benefit of Andrea's claims as a roadmap.

> **A.    The Board's Determination That Petitioner Met Its Burden Is Reversible Error**

The entirety of the Board's determination on whether Petitioner met its burden on motivation to combine is just a page and a half.  Appx0005-0006.  In that brief analysis, the Board first finds that there is no dispute that "Hirsch specifically identifies the problem of speech pause detection to estimate noise, and specifically identifies Martin as a solution to that problem, particularly in non-stationary noise settings."  Appx0005.  Contrary to the Board's finding of agreement, Andrea has disputed this point from the beginning.  *See, e.g.*, Appx00762-0764, Appx0839-0847.  Nothing in Hirsch says that Martin is a "solution."  In fact, it says the opposite.  Hirsch states "[s]ome *approaches* are known to avoid the problem of speech pause detection and to estimate the noise characteristics just from a past segment of noisy speech."  Appx0448 (citing Martin, emphasis added).  But the very next sentence states: "[t]he *disadvantage* of most *approaches* is the need of relatively long past segments of noisy speech."  Appx0448 (emphasis added).

The Board does not address this second sentence *at all* before finding that Petitioner had met its burden.  Appx0005-0006.  This is legal error because the law does not permit the Board to analyze individual sentences in a prior art reference without the context of the rest of the reference.  To the extent that the Board analyzed this sentence later in determining whether Andrea rebutted Petitioner's showing, that approach was error because it put the burden on Andrea to prove the absence of a motivation to combine.  *In re Magnum Oil Tools Int'l, Ltd*, 829 F.3d 1364, 1375-76 (Fed. Cir. 2016).

The Board then supports its finding of motivation to combine by again assuming that Andrea agrees that Hirsch is silent on non-stationary noise environments.  The position that Andrea actually took is that there is no indication that Hirsch does not already work in non-stationary noise environments, meaning there is no indication that Hirsch needs to be improved for such environments.  Appx0765-0766, Appx0448.  The Board cannot satisfy this Court's charge to "address[] why a skilled artisan would have specifically incorporated Martin's noise power estimation algorithm into Hirsch's spectral subtraction system" by stating that Andrea agrees with a proposition that Andrea expressly contests.  Appx1976-1977 (citing *In re Sang Su Lee*, 277 F.3d 1338, 1343 (Fed. Cir. 2002) (motivation is needed for making the "specific combination that was made by the applicant.")).

But, even if the Board had not misstated the record, the Board cites to no authority that *silence* establishes the *existence* of a motivation to combine. Indeed, this Court's authority holds the opposite, that "mere possibility is not enough." *PersonalWeb Techs., Inc. v. Apple, Inc.*, 917 F.3d 1376, 1382 (Fed. Cir. 2019); *Polaris Indus., Inc. v. Arctic Cat, Inc.*, 882 F.3d 1056, 1068 (Fed. Cir. 2018). A finding that a reference's silence is sufficient would greatly and unjustifiably expand the Board's ability to find motivation to combine using improper and impermissible hindsight. In view of the record here, the Board's decision makes even less sense because Hirsch and Martin teach systems that each provide a complete solution. Appx0448, Appx0452. The Board relies on positive statements in Martin to find that a POSITA would understand that Martin teaches a desirable improvement. Appx0005, Appx0007-0008. But in analyzing Hirsch, the Board completely ignores almost identical language to reach the conclusion that Hirsch *needs* to be improved. This inconsistency shows that the Board is impermissibly using the claims as a roadmap to help Petitioner establish a motivation to combine. *TQ Delta, LLC v. CISCO Sys., Inc.*, 942 F.3d 1352, 1361 (Fed. Cir. 2019).

## B.   The Board's Rejection Of Andrea's Counterarguments Is Reversible Error

After finding that Petitioner met its burden, the Board determined whether Andrea's "[r]ebuttal" arguments command a different conclusion. Appx0007-0014. The Board erred in its assessment of Andrea's arguments by ignoring evidence of

record, shifting the burden to Andrea, and reaching internally inconsistent conclusions.

*First*, this Court remanded to the Board to make specific findings of fact regarding "why a skilled artisan would have specifically incorporated Martin's noise power estimation algorithm into Hirsch's spectral subtraction system or threshold calculation," as well requiring that the Board address the "specific motivation issues contested by Andrea." Appx1976-1977. The Board limited its analysis to the three examples identified by this Court, without considering the additional evidence and arguments that Andrea specifically identified to the Board in Andrea's approved citation list. Appx1983-1987. The law requires that the Board consider all evidence. *Magnum Oil*, 829 F.3d at 1376 (quoting *In re Cyclobenzaprine*, 676 F.3d 1063, 1077 (Fed. Cir. 2012) (other citations omitted)). The Board failed to do so here. Moreover, the Board failed to consider all of the evidence in determining whether Petitioner had met its burden, instead finding Petitioner satisfied this burden by analyzing only part of the record, then impermissibly shifting the burden of proof to Andrea to rebut that showing. This is error.

*Second*, in assessing the question of whether Hirsch shows a need for improvement and Martin provides that improvement, the Board made several errors. The only basis for its determination that Hirsch shows a need for improvement is a misrepresentation of the record, namely that Andrea agrees that Hirsch is "silent" on

its performance in non-stationary noise.  Appx0007.  Andrea does not agree, but, even if it did, silence does not show a need for improvement.  Relying on silence invites hindsight bias, particularly where, as here, the reference describes a complete and working system.  Appx0448 (Hirsch reference, describing its system as able to "enhance noisy speech and to improve the performance of speech recognition systems.").  Further, the Board's findings are arbitrary and capricious because they contradict one another.  While the Board found that Martin's discussion of the effectiveness of its system demonstrates that it provides an "improvement" over Hirsch, the Board ignored nearly identical language in Hirsch to find that Hirsch's system needed to be improved.

*Third*, the Board erred when it concluded that Hirsch does not disparage or teach away from Martin.  Appx0009-0013.  The Board first found that Hirsch's discussion about "disadvantages" may not be referring to Martin.  Appx0009-0010.  No party ever raised this argument.  The Board's reliance on it thus violates the APA by depriving Andrea of notice and the opportunity to develop rebuttal evidence.  It is further contrary to the record, as both parties acknowledged that Hirsch's statement about "relatively long past segments of noisy speech" is referring to Martin.  Appx0401, Appx0840-0841.  The Board then rejects the evidence *from both parties* as conclusory.  This should mean that Petitioner failed to satisfy its burden of proof.  Instead, the Board found that it could substitute its own opinions for the

evidence of record to determine that a 225 millisecond difference in past segments of noisy speech would be considered insignificant by a POSITA, citing *Belden*, 805 F.3d at 1079. *Belden* does not permit the Board to serve as expert witness to render expert conclusions entirely outside of the references themselves. Moreover, the Board's findings are arbitrary and capricious and not supported by substantial evidence because the language in the references contradicts them.

***Finally***, this Court ordered the Board to make findings of fact regarding whether Hirsch obviates the need to address the speech pause detection problem, and therefore that a POSITA would not have looked to Martin. In reaching a conclusion in Petitioner's favor on this issue, the Board relied only on irrelevant and conclusory testimony from Petitioner's expert. Such testimony is not sufficient. *TQ Delta*, 942 F.3d at 1358.

### C.    The Board's Findings On How Hirsch And Martin Would Be Combined Are Unsupported By Substantial Evidence

The Board's determination that Petitioner showed how a POSITA would have combined Hirsch and Martin ignores Andrea's evidence and is unsupported by Petitioner's evidence. Andrea presented detailed, specific evidence from its expert witness showing that a POSITA would not have combined Hirsch with Martin. Petitioner, on the other hand, presented only conclusory evidence that the proposed modification "is simply 'the general approach followed by those working in the field of noise reduction, where techniques addressing particular challenges or issues (e.g.,

noise reduction in nonstationary sound environments) are routinely added to or used to modify an existing noise reduction scheme.'" Appx0016. This is not sufficient. *Polaris Indus.*, 882 F.3d at 1068 (finding Board succumbed to hindsight bias by "focus[ing] on what a skilled artisan would have been *able* to do, rather than what a skilled artisan would have been *motivated* to do at the time of the invention.").

For all these reasons, the Board erred in finding claims 6-9 unpatentable.

## ARGUMENT

## STANDARD OF REVIEW

The Board's factual determinations are reviewed for substantial evidence and its legal determinations are reviewed *de novo*. *In re Mouttet*, 686 F.3d 1322, 1330-31 (Fed. Cir. 2012).

Obviousness is a legal question with underlying factual findings and this Court reviews the Board's legal conclusions without deference and its factual findings for substantial evidence. *Kennametal, Inc. v. Ingersoll Cutting Tool Co.*, 780 F.3d 1376, 1381 (Fed. Cir. 2015). "What the prior art teaches, whether a person of ordinary skill in the art would have been motivated to combine references, and whether a reference teaches away from the claimed invention are questions of fact." *Meiresonne v. Google, Inc.*, 849 F.3d 1379, 1382 (Fed. Cir. 2017).

This Court should uphold the Board's factual findings only if they are supported by substantial evidence. *Mouttet*, 686 F.3d at 1330-31. Substantial

evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).

This Court reviews decisions related to the Board's compliance with its procedures for abuse of discretion. *Ericsson Inc. v. Intellectual Ventures I LLC*, 901 F.3d 1374, 1379 (Fed. Cir. 2018). "'An abuse of discretion is found if the decision: (1) is clearly unreasonable, arbitrary, or fanciful; (2) is based on an erroneous conclusion of law; (3) rests on clearly erroneous fact finding; or (4) involves a record that contains no evidence on which the Board could rationally base its decision.'" *Id.* (citation omitted). The Board's actions are set aside "if they are 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' or 'unsupported by substantial evidence.'" *Vicor Corp. v. SynQor, Inc.*, 869 F.3d 1309, 1320 (Fed. Cir. 2017) (citing 5 U.S.C. § 706(2)).

## V.    THE BOARD'S DETERMINATION THAT A POSITA WOULD HAVE BEEN MOTIVATED TO COMBINE HIRSCH AND MARTIN SHOULD BE REVERSED

This Court remanded to the Board to make specific findings of fact on whether Petitioner met its burden of proving by a preponderance of the evidence that a POSITA would have been motivated to combine Hirsch with Martin. The Board made no such findings of fact, instead assuming away the central disputes and impermissibly relying on hindsight bias by basing its motivation to combine finding on silence. These legal errors warrant reversal, not just remand. *Belden*, 805 F.3d

at 1077.  Continuing to give Petitioner more chances to meet a burden that this Court and the Board previously found were not met is unnecessary and unfair.  After three swings and three misses, the only reasonable conclusion is that the record cannot support a motivation to combine.

### A.    The Board Erred In Failing To Analyze Martin And Hirsch As A Whole

The Board's analysis of whether Petitioner met its burden of proof that a POSITA would have combined Hirsch with Martin begins with a determination that "there is no dispute that Hirsch specifically identifies the problem of speech pause detection to estimate noise, and specifically identifies Martin as a solution to that problem, particularly in non-stationary noise settings."  Appx0005.  The Board cites no record support for this presumption, and Andrea has expressly and repeatedly contested it.  *See, e.g.*, Appx0762-0764.  To the extent Andrea understands why the Board made this presumption, it appears to be based on one sentence from Hirsch without considering the very next sentence.

Hirsch states in full relevant part:

> Some approaches are known to avoid the problem of speech pause detection and to estimate the noise characteristics just from a past segment of noisy speech [citing *inter alia* Martin].  **The disadvantage of most approaches is the need of relatively long past segments of noisy speech.**

32

Appx0448 (emphasis added).  While Hirsch does indeed say that Martin is an approach "known to avoid the problem of speech pause detection," it does not state that Martin is a "solution."  *Compare* Appx0448 *with* Appx0005.  In fact, Hirsch indicates that Martin is **not** a "solution" in two ways: (i) by stating in the very next sentence that "[t]he disadvantage of most approaches is the need of relatively long past segments of noisy speech"; and (ii) by providing its own complete algorithm that does not incorporate any teachings from Martin.  Appx0448.

Reliance on an individual sentence from Hirsch without consideration of its surrounding discussion is a legal error that fails to comply with *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966).  In *Bausch & Lomb, Inc. v. Barnes-Hind/Hydrocurve, Inc.*, for example, this Court found that the district court erred in applying improper hindsight bias by selecting a "single line" out of the prior art reference.  796 F.2d 443, 448 (Fed. Cir. 1986).  This Court explained that "'[i]t is impermissible within the framework of section 103 to pick and choose from any one reference only so much of it as will support a given position to the exclusion of other parts necessary to the full appreciation of what such reference fairly suggests to one skilled in the art.'"  *Id.* (quoting *In re Wesslau*, 353 F.2d 238, 241 (CCPA 1965) & citing *In re Mercer*, 515 F.2d 1161, 1165-66 (CCPA 1975)).  This Court continued that it is specifically improper to do what the Board did here, namely, ignore "the immediately following sentences in the same paragraph," particularly where, as

here, it is clear that the reference is "setting up a strawman and pointing out its disadvantages to highlight the advantages of [the patented] invention." *Id.*

The requirement that references be considered as a whole is long-standing. *Warsaw Orthopedic*, 832 F.3d at 1332 (quoting *Panduit Corp. v. Dennison Mfg. Co.*, 810 F.2d 1561, 1568 (Fed. Cir. 1987)); *see also Polaris Indus.*, 882 F.3d at 1069 ("Moreover, a reference 'must [be] considered for all it taught, disclosures that diverged and taught away from the invention at hand as well as disclosures that pointed towards and taught the invention at hand.'") (quoting *Ashland Oil, Inc. v. Delta Resins & Refractories, Inc.*, 776 F.2d 281, 296 (Fed. Cir. 1985)).  The Board failed to follow this law, instead relying only on the Hirsch sentence that suited Petitioner's argument – that Hirsch identifies Martin as a known "approach" – and then rewriting it to find that Hirsch identifies Martin as a "known solution," while ignoring Hirsch's express criticisms.  Appx0005-0006.  The Board's one-and-one-half-page analysis of whether Petitioner satisfied its burden never even mentions the surrounding language in Hirsch, much less finds that Petitioner satisfied its burden in view of the references as a whole.  Appx0005-0006.

The Board does address Hirsch's statement about the "disadvantage of most approaches" later in its Third IPR Decision, but only in determining whether Andrea rebutted the Board's conclusion that Petitioner had proven motivation to combine. This is improper.  "In an *inter partes* review, the burden of persuasion is on the

petitioner to prove 'unpatentability by a preponderance of the evidence,' 35 U.S.C. § 316(e), and that burden never shifts to the patentee." *Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.*, 800 F.3d 1375, 1378 (Fed. Cir. 2015) (quoting *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1326-27 (Fed. Cir. 2008)).  The Board may not shift the burden of production to Andrea to rebut a showing of nonobviousness, including motivation to combine.  *Magnum Oil*, 829 F.3d at 1376; 35 U.S.C. § 316(e).  But that is precisely what the Board did here.  It considered only the part of Hirsch that supported Petitioner's position, rewrote it, and then shifted the burden to Andrea to show why the reference as a whole does not support that finding. Appx0005-0007.

Reversal is appropriate because Board's analysis does not meet this Court's charge to make findings of fact showing "why a skilled artisan would have specifically incorporated Martin's noise power estimation into Hirsch's spectral subtraction system" other than through the application of impermissible hindsight and burden shifting.  Appx1976-1977.

### B.     The Board Erred In Finding Hirsch's Alleged Silence Regarding Non-Stationary Noise Is Sufficient To Establish Motivation To Combine

The Board's finding that Petitioner met its burden is further in error because it relies on Hirsch's silence to establish the existence of a motivation to combine, without explanation or support.  Appx0005.

### 1.    The Board Makes No Findings of Fact on Hirsch's Silence, Having Assumed No Dispute

After incorrectly concluding that Hirsch identified Martin as a "solution," the Board determined that Petitioner met its burden in showing motivation to combine because Hirsch is silent on its system's effectiveness in non-stationary noise settings, while Martin provides "*good results* in non-stationary noise environments." Appx0006.  Rather than making findings of fact to show that Hirsch is silent on non-stationary noise, the Board presumed that all parties concur in that proposition. *See also* Appx0005 ("there is no dispute that Hirsch is silent as to the effectiveness of its technique in non-stationary noise environments.").  Andrea, however, did dispute this.

What Andrea argued below is that Petitioner failed to prove that Hirsch is not already effective in non-stationary noise environments.  Appx0765-0766.  Andrea explained: "[Petitioner] notes that Hirsch appears to have only tested its techniques in stationary noise settings, but there is no evidence suggesting that Hirsch's techniques would not work well, or would need to be improved, in non-stationary noise environments."  Appx0765-0766.  In other words, Andrea argued that Petitioner had not shown anything in Hirsch that indicates it does not already work in non-stationary noise environments.  Andrea never conceded that Hirsch is silent on its effectiveness in non-stationary noise environments.

Andrea supported this position with evidence from the record.  In describing the problem it seeks to address, Hirsch notes that estimating noise "is a difficult task especially if the background noise is not stationary or the signal-to-noise ratio (SNR) is low."  Appx0448.  Hirsch then proposes a simple recursive noise estimation algorithm, which addresses the problem in the context of not requiring an explicit pause in speech to detect the noise.  Appx0448.  While Hirsch did not state whether it tested its algorithm in non-stationary noise settings, nothing in the background discussion suggests that Hirsch's algorithm does not work in these environments.  Appx0844-0845.  Instead, Hirsch presents a complete algorithm (without Martin's approach), and notes that its algorithm can "quickly adapt to slowly varying noise levels or slowly changing noise spectra."  Appx0451, Appx0448, Appx0839.

Andrea identified this evidence in its approved citation list on remand.  The Board should have—but failed to—address it and failed to make any findings of fact that Hirsch is actually silent on non-stationary noise, other than presuming incorrectly that Andrea agrees.  Appx1983-1987.  These are reversible legal errors.  *Magnum Oil*, 829 F.3d at 1376.

## 2.   Hirsch's Alleged Silence on Non-Stationary Noise Cannot Establish a Motivation to Combine

Even if Andrea had agreed that Hirsch is silent on non-stationary noise, that does not answer the question of "why a skilled artisan would have specifically incorporated Martin's noise power estimation algorithm into Hirsch's spectral

subtraction system or threshold calculation." Appx1976-1977. The Board cites to no case law that stands for the proposition that silence is sufficient to explain why a POSITA would select individual components of Martin to insert into Hirsch.

Instead, reliance on silence improperly rests upon the exact hindsight analysis that the motivation to combine requirement is intended to prevent. As this Court explained in *TQ Delta*, "[i]dentifying a motivation to combine the prior art is important because 'inventions in most, if not all, instances rely on building blocks long since uncovered, and claimed discoveries almost of necessity will be combinations of what, in some sense, is already known.'" 942 F.3d at 1357 (quoting *KSR*, 550 U.S. at 418-19). Relying on silence as the Board did here, invites the "*ex post* reasoning *KSR* warned of and fails to identify any actual reason why a skilled artisan would have combined the elements in the manner claimed." *In re Van Os*, 844 F.3d 1359, 1361-62 (Fed. Cir. 2017) (citing *KSR*, 550 U.S. at 418). Likewise, a determination that silence in one reference is sufficient to find the existence of a motivation to combine conflicts with this Court's holding that the "mere possibility" that references can be combined is not enough. *PersonalWeb*, 917 F.3d 1382.

At the very least, the Board needed to explain what about Hirsch's purported silence would have created a motivation to incorporate specific teachings of Martin, because it cannot be the case that silence in one reference on what is discussed in another is always sufficient to prove motivation to combine. The Board makes no

such findings.  An endorsement of the Board's analysis would thus greatly expand the scope of what constitutes evidence for a motivation to combine.

### 3.    The Board's Decision Is Arbitrary and Capricious

As discussed above, the Board's findings rest on a misconstruction of the record, namely that Andrea agrees that Hirsch identifies Martin as a "solution" and that Andrea agrees that Hirsch is silent on non-stationary noise.  The Board failed to cite anything for the first proposition and misrepresented Andrea's position on the second.  Appx0005.  The Board cited to no evidence other than nonexistent consensus.  Accordingly, the Board's decision is not supported by substantial evidence and is arbitrary and capricious.

The Board's determination is further arbitrary and capricious because the Board treated the express teachings of Hirsch and Martin inconsistently without providing an explanation.  In determining that a POSITA would understand that Martin provides an improvement in non-stationary noise, the Board explains that Martin discloses a "good result[]."  Appx0005.  In support, the Board cites to Martin's statements that its algorithm is "computational[ly] inexpensive" and "effective."  Appx0005-0006, Appx0008 (citing Appx0454-0455).  The Board misunderstands Martin's teachings.  The sentence quoted actually explains that Martin provides a "computational[ly] inexpensive and effective mean [*sic*] to cope

39

with" "[v]arying noise levels," not non-stationary noise.  Appx0455.  Varying noise levels and non-stationary noise are not the same.

Further, the Board ignores nearly identical statements in Hirsch about its effectiveness to reach the conclusion that Hirsch's system needs to be improved. Appx0005, Appx0007.  Hirsch states that its algorithm provides a "good result[]" by stating it "can be shown to enhance noisy speech and to improve the performance of speech recognition systems."  Appx0448.  Hirsch states further that its recursive algorithm "has a low computational complexity" and provides "a good supplement to [Hidden Markov Model] recognition schemes."  Appx0451. Further, Hirsch, like Martin, notes that its algorithm is at least "able to quickly adapt to slowly varying noise levels or slowly changing noise spectra."  Appx0448. Nothing in Hirsch limits these statements to stationary noise.

If the Board interpreted this nearly identical wording consistently, it would have supported Andrea's argument that a POSITA would not understand Hirsch to need improvement and the Board did not explain its disparate treatment.  Appx0007 (citing Appx0765-0766).  When there is a direct conflict in the Board's fact finding, the Board must provide a reasoned basis for the findings, otherwise its decision is arbitrary and capricious.  *See Vicor Corp.*, 869 F.3d at 1323 (finding decision "arbitrary" and "capricious" where Board's factual findings for two reexamination proceedings on essentially the same record reached contradictory conclusions

without explanation). Arbitrary and capricious action warrants reversal. *See id.*; *see also* 5 U.S.C. § 706(2)(A); *Honeywell Int'l Inc. v. Mexichem Amanco Holding S.A. DE C.V.*, 865 F.3d 1348, 1354 (Fed. Cir. 2017) (vacating motivation to combine findings where Board's analysis was "internally inconsistent").

## VI. THE BOARD IMPERMISSIBLY SHIFTED THE BURDEN TO ANDREA, DOES NOT ADDRESS THE ISSUES REQUIRED BY THIS COURT'S REMAND, AND ITS FINDINGS ARE NOT SUPPORTED BY SUBSTANTIAL EVIDENCE

As discussed above, the Board's page-and-a-half analysis on whether Petitioner met its burden is conclusory, inconsistent with the record, and arbitrary and capricious. The Board has now had three chances to find and explain why a POSITA would have been motivated to combine Hirsch and Martin, an issue on which Andrea does not bear the burden of proof. The Board and Petitioner have not found that evidence. Reversal is therefore appropriate and this Court should find that claims 6-9 are not unpatentable, without having to reach the issue of Andrea's rebuttals to the arguments raised by Petitioner. *See DSS Tech. Mgmt. v. Apple Inc.*, 885 F.3d 1367, 1377 (Fed. Cir. 2018) (reversing finding of unpatentability where "this [was] not a case where a more reasoned explanation than that provided by the Board can be gleaned from the record"); *Arendi S.A.R.L. v. Apple Inc.*, 832 F.3d 1355, 1366 (Fed. Cir. 2016) (same).

But, even if this Court finds that the Board's reasoning that a POSITA would have been motivated to combine Hirsch with Martin is sufficient (Appx0005-0006),

reversal and/or remand is still appropriate because the Board made numerous clear errors in rejecting Andrea's arguments.  Appx0007-0014.

###### A.     The Board Failed To Analyze All Evidence Of Record

This Court remanded to the Board to address "the specific motivation issues contested by Andrea."  Appx1977.  The Court then gave three "examples" of issues contested by Andrea.  Appx1977.  The Third IPR Decision addresses only those three issues, while ignoring the rest of Andrea's evidence and arguments.  This is a legal error because, "'a fact finder must consider *all* evidence … before reaching a determination.'"  *Magnum Oil*, 829 F.3d at 1376 (quoting *In re Cyclobenzaprine*, 676 F.3d at 1077.

Andrea identified additional evidence and arguments in its approved citation list (and would have discussed that evidence if the Board had allowed briefing, which it refused to do).  Specifically, Andrea identified paragraphs 81-92 of the expert declaration of Dr. Douglas, which lays out in detail additional problems with Petitioner's analysis of motivation to combine.  Appx1985, Appx0839-0847.

While acknowledging that Hirsch and Martin both disclose algorithms for estimating signal quantities, Dr. Douglas explained that their algorithms have "different desired goals."  Appx0839.  Specifically, Martin's algorithm is directed to "a method of estimating the signal-to-noise ratio of a noisy speech signal," while Hirsch "does not use signal-to-noise ratio as a parameter for any of its processing."

Appx0839. In view of this distinction, Dr. Douglas explained that a POSITA "would not be motivated to modify the low complexity approach of <u>Hirsch</u> and introduce the more complex SNR estimation techniques of <u>Martin</u> into <u>Hirsch</u>." Appx0839.

The Board likewise failed to address Dr. Douglas's explanation of how Petitioner's proposed combination would completely remove the need for Hirsch's recursive noise estimation algorithm. Appx0845-0847. As explained by Dr. Douglas, Hirsch and Martin provide independent algorithms with their own distinct approaches to detecting noise. One of Hirsch's proposed solutions to detecting noise is through its recursive noise estimation algorithm. Appx0448. Dr. Douglas explained how incorporating Martin's algorithm into Hirsch would completely remove the need for Hirsch's recursive noise estimation algorithm, and how such a proposed substitution would have "significant impacts" on "Hirsch's overall system" due to the wholesale elimination of Hirsch's recursive algorithm. Appx0845-0847.

Finally, Dr. Douglas explained why Hirsch and Martin's discussion of spectral subtraction does not provide a reason for a POSITA to combine Hirsch and Martin. Appx0840. In particular, Dr. Douglas explained how Hirsch and Martin provided independent solutions, and that a POSITA would not have been motivated to delete portions of Hirsch and replace them with Martin. Appx0840. The Board does not address any of this. These points highlight the hindsight nature of

Petitioner's proposed combination, which would completely eliminate the recursive noise estimation algorithm proposed by Hirsch. *See TriVascular, Inc. v. Samuels*, 812 F.3d 1056, 1068 (Fed. Cir. 2016) (affirming Board's findings regarding lack of motivation to combine where the substitution proposed by the petitioner "would destroy the basic objective" of the prior art).

To the extent that the Board was confused as to the arguments that Andrea considers to be relevant, the Board caused that problem by denying Andrea's request for additional briefing and permitting only the approved citation list. Appx1981. The above portions of Dr. Douglas's report are included in that list and thus should have been considered. The Third IPR Decision should be reversed at least because there is additional evidence of record that the Board did not weigh or consider. *See Magnum Oil*, 829 F.3d at 1376.

**B.    The Board Erred In Finding That Hirsch Shows A Need For Improvement In Non-Stationary Noise Environments And Whether Martin Provides Such Improvement (Third IPR Decision § C.1)**

      **1.    The Board's Finding That Hirsch Needs Improvement Misstates the Record, Ignores Evidence Presented by Andrea, and is Internally Inconsistent**

This Court remanded to the Board for a determination of "whether[] Hirsch shows a need for improvement in nonstationary noise environments." Appx1977. The Board's analysis of this question is limited to one paragraph that relies on Hirsch's purported silence on non-stationary noise to reject what it terms Andrea's

44

"[r]ebuttal" argument that Hirsch does not show a need for improvement in non-stationary noise environments. Appx0007. The Board's analysis here suffers from the same errors discussed above. *See* § IV.B. The Board incorrectly assumes that there is agreement that Hirsch is silent on non-stationary noise, then relies on that alleged *silence* to find the *existence* of a motivation to combine. Appx0007. The Board's reliance on purported "silence" is impermissible hindsight and, further, is not supported by substantial evidence because it cites only a nonexistent consensus to show that Hirsch is "silent" on non-stationary noise.

Further, as with its analysis of whether Petitioner met its burden, the Board's rejection of Andrea's "[r]ebuttal" argument that Hirsch does not need to be improved is also internally inconsistent. To find that Martin discloses an improvement or "good result[]," the Board relies in several places in the Third IPR Decision on Martin's statements that its algorithm is "computational[ly] inexpensive" and "effective." Appx0005-0006, Appx0008 (citing Appx0454-0455). Yet, the Board ignores similar statements in Hirsch to reach the conclusion that Hirsch needed improvement. Appx0005, Appx0007; *see* § V.B.3. Just like Martin, Hirsch states that its algorithm provides a "good result[]" by stating it "can be shown to enhance noisy speech and to improve the performance of speech recognition systems" and "has a low computational complexity." Appx0448. If Martin's statements are sufficient to show that a POSITA would have understood that Martin provided "good

results," then Hirsch's statements should be interpreted the same way, undermining the Board's determination that Hirsch needs improvement.  Appx0007 (citing Appx0765-0766).

The Board did not explain why it relied on Martin's "effective" teachings, but not Hirsch's.  The Board's finding that Hirsch needs improvement is therefore arbitrary and capricious and should be reversed.  *See, e.g.*, *Robert Bosch, LLC v. Iancu*, 778 Fed. App'x 871, 874-75 (Fed. Cir. 2019) (nonprecedential) (finding same panel reaching opposite conclusions on identical issue demonstrates arbitrary and capricious nature of decision).

### 2.    The Board's Determination that Martin Provides the Improvement Is Not Supported by Substantial Evidence

Having determined that Hirsch's silence answers this Court's first question of "whether[] Hirsch shows a need for improvement in nonstationary noise environments," the Board went on to address this Court's second question of "whether Martin provides such improvement."  Appx1977, Appx0009-0013.  The Board answers that second question in the affirmative, but misunderstands and misconstrues the record in doing so.  Accordingly, this finding is not supported by substantial evidence.  *OSI Pharms., LLC v. Apotex Inc.*, 939 F.3d 1375, 1381–82 (Fed. Cir. 2019) ("The substantial evidence standard asks 'whether a reasonable fact finder could have arrived at the agency's decision,' and 'involves examination of the

record as a whole, taking into account evidence that both justifies and detracts from an agency's decision.'") (quoting *Gartside*, 203 F.3d at 1312)).

The Board presumes that incorporating Martin's noise estimation algorithm into Hirsch will improve the performance of Hirsch because Martin had tested its system in non-stationary noise settings.  Appx0007.  However, that presumption is not supported by the record.  To reach it, the Board misconstrues the teachings of Martin.  Appx0008-0009.  The Board recognizes that Andrea's expert, Dr. Douglas, explained that "Martin states on page 1095 that his 'estimate is biased when no speech is present' and states on page 1096 that his 'algorithm is accurate for medium to high SNR conditions, but necessarily biased when no speech is present.'"  Appx0008-0009 (quoting Appx0843-0844).  The Board rejects this evidence, however, on an incorrect understanding that the "bias is described as 'slightly biased' in the preceding paragraph" of Martin.  Appx0009.  No party previously raised this argument, meaning that Andrea had no opportunity to rebut or address it in violation of the APA.  5 U.S.C. § 554(b)(3).

Further review demonstrates the Board misread Martin.  Martin's "slightly bias" statement is not referring to the performance of Martin's algorithm estimating signal-to-noise ratio "when no speech is present" as used in the paragraph cited by Dr. Douglas.  Appx0843-0844.  It is instead referring to a "*noise power estimate*," which is used in Martin's algorithm for signal-to-noise ratio estimation.  *Compare*

Appx0455 ("Our informal listening test reveal [*sic*] relatively few annoying musical tones. However, due to the fact that *we subtract slightly biased noise power estimates* (ofactor = 1.5) the noise suppression is limited.") (emphasis added) *with* Appx0843-0844 (The "algorithm is accurate for medium to high SNR conditions but *necessarily biased* when no speech is present.") (emphasis added) (quoting Appx0454-0455). The Board incorrectly assumes these two uses of "bias" both refer to performance when speech is not present, but Martin expressly contradicts that assumption.[1]

The Board's adoption of testimony from Petitioner's expert does not save its analysis. Appx0008 (citing Appx0401). Petitioner's own expert, Dr. Hochwald, only states that incorporating Martin's noise estimation algorithm "*could* improve the performance of Hirsch's system in certain real-world scenarios, such as where non-stationary noise is present." Appx0402. But "mere speculation" is not substantial evidence. *See Intellectual Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320, 1331 (Fed. Cir. 2017); *see also PersonalWeb*, 917 F.3d at 1382.

---

[1] The Board cites to Patent Owner's Response at page 39 for the proposition that Andrea acknowledged that Martin concluded that the bias "when no speech is present" is described as "slightly biased." Appx0009 (citing Appx0767). This is incorrect. Andrea and its expert properly treated Martin's discussion of bias "when speech is not present" (Appx0766), and its discussion of "slightly biased" noise power estimates (Appx0767), as separate problems with Martin's algorithm.

Indeed, Dr. Hochwald's opinion confirms that Martin's noise estimation algorithm may not provide any improvement to Hirsch's algorithm at all.

The Board further credited Dr. Hochwald's testimony that "'Martin explains that the noise floor algorithm is particularly suited to identifying noise in a frequency bin during active speech [Martin, pg. 1094],' and 'Martin's algorithm has some advantages in that it had been tested to work well with non-stationary noise.'" Appx0008 (citing Appx0401). This testimony does not support the Board's conclusion that Martin provides "'good results in cases of non-stationary noise environments.'" Appx0008 (citing Appx0765). The first statement from Dr. Hochwald does not concern Martin's purported efficacy for non-stationary noise environments. The second statement is merely conclusory and conflicts with the Board's findings that Hirsch, which includes almost the same language, needs to be improved. *TQ Delta*, 942 F.3d at 1358.

### C. The Board Erred In Its Determination That Hirsch Does Not Disparage Martin When It Found The Differences In Length Of Past Segments Of Noisy Speech Insignificant (Third IPR Decision at § C.2)

This Court asked the Board to make findings of fact regarding whether "Hirsch disparages Martin because of 'the need of relatively long past segments of noise speech' and the 'significant difference' in time requirements between Martin and Hirsch." Appx1977. The law is clear that the burden of proof stays on Petitioner and that there is no shifting of the burden of persuasion to establish a lack of

motivation to combine. *Magnum Oil*, 829 F.3d at 1375-76 (burden of proof and persuasion remains on patent challenger). The Board's decision does not follow this law. It instead raises its own new theories and, after rejecting the evidence from all experts, substitutes its own judgment. Appx0009-0010. Its conclusions, moreover, are arbitrary and capricious because they conflict with the express teachings in Hirsch and Martin. Reversal is therefore appropriate.

> **1.    The Board's Determination that Hirsch May Not be Referring to Martin in Its Discussion of "Relatively Long Past Segments of Noisy Speech" Has No Support and Violates the APA**

As discussed above, the Board found that Petitioner had established a motivation to combine without considering the full context of Hirsch's discussion, including Hirsch's criticism of approaches like Martin. Hirsch's discussion of Martin in full states: "Some approaches are known to avoid the problem of speech pause detection and to estimate the noise characteristics just from a past segment of noisy speech. [citing Martin, Hirsch, and Campernolle]. The *disadvantage* of most approaches is the need of relatively long past segments of noisy speech." Appx0448 (emphasis added). The Board's reliance on just the first sentence to reach its conclusion is reversible legal error. *Bausch & Lomb*, 796 F.2d at 448-49. This is true even if this Court finds that Hirsch's discussion does not expressly rise to the level of teaching away. *See Apple Inc. v. Samsung Elecs. Co.*, 839 F.3d 1034, 1051 n.15 (Fed. Cir. 2016) (*en banc*). The Board's discussion of the crucial second

sentence above in its rejection of what it calls Andrea's "Rebuttal" is not sufficient because it shifts the burden of proof to Andrea to show that a POSITA, reading Hirsch as a whole, would not have combined the references. *Magnum Oil*, 829 F.3d at 1378-79 ("Where, as here, it is clear that the Board did not require the petitioner to support its claim of obviousness by a preponderance of the evidence, [this Court] must reverse.").

Regardless, even if the Board's split approach were proper, its decision violates the APA. The Board rejected Andrea's argument, finding that Hirsch's discussion of a "disadvantage" may not be referring to Martin at all because Hirsch says only that the "disadvantage" applies to "most approaches," without referencing Martin specifically. Appx0009. No party raised this argument below. In fact, both parties agreed that Hirsch is, in fact, discussing the disadvantages of Martin. According to Petitioner's expert, Dr. Hochwald: "Hirsch then explains that some of the existing techniques, *such as Martin*, require 'relatively long past segments of noisy speech' [Hirsch, pg. 153]." Appx0401 (emphasis added), Appx1001 (Hochwald acknowledging that he inferred that Hirsch's discussion of disadvantage of most approaches was referring to Martin). Andrea's expert, Dr. Douglas, similarly confirmed that Hirsch's discussion is also referring to Martin: "But Hirsch immediately disparages techniques like Martin's, explaining that '[t]he disadvantage

of most approaches is the need of relatively long past segments of noisy speech.'" Appx0840-0841.

To comply with the APA, in an IPR proceeding the Board must "timely inform[ ]" the parties of "the matters of fact and law asserted," 5 U.S.C. § 554(b)(3); it must give the parties an opportunity to submit facts and arguments for consideration, *id*. § 554(c); and it must permit each party to present oral and documentary evidence in support of its case or defense, as well as rebuttal evidence, *id*. § 556(d). *See Hamilton Beach Brands*, *Inc. v. F'Real Foods, LLC*, 908 F.3d 1328, 1338 (Fed. Cir. 2018); *Rovalma, S.A. v. Bohler-Edelstahl GmbH & Co. KG*, 856 F.3d 1019, 1029 (Fed. Cir. 2017); *Belden Inc.*, 805 F.3d at 1064, 1080. "Pursuant to these provisions, the Board may not change theories midstream without giving the parties reasonable notice of its change." *Hamilton Beach*, 908 F.3d at 1338 (citing *Belden*, 805 F.3d at 1080 (interpreting § 554(b)(3) in the context of IPR proceedings)).

Petitioner never made the assertion, as the Board does, that Martin falls outside the category of "most approaches" discussed in Hirsch. *Compare* Appx1247-1248 *with* Appx0009-0010. Indeed, Petitioner could not take that position because its own expert, Dr. Hochwald, admitted that Hirsch's discussion about the disadvantages of most approaches does refer to Martin. Appx0401, Appx1001. Accordingly, the Board's unsupported finding not only relied upon an

argument advanced by neither party (thereby depriving Andrea of any opportunity to raise rebuttal evidence), but also contradicts the evidence presented by the parties.

Further, the Board does not cite to any portion of the record that supports its reading of Hirsch, nor does it make any findings of fact showing that its interpretation is consistent with that of a POSITA, notwithstanding the positions taken by both experts. Appx0009-0013. Just because the Board thinks that Hirsch may not be referring to Martin (despite the citation) and that Hirsch *could* be merely describing alternatives, does not mean that Petitioner has met its burden to show how a POSITA would have viewed the references that way. *Intellectual Ventures*, 870 F.3d at 1331. This is a reversible legal error because "[w]hether prior art invalidates a patent claim as obvious is determined from the perspective of one of ordinary skill in the art." *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 655 F.3d 1364, 1374 (Fed. Cir. 2011) (citing *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 420 (2007)).

Further, the Board's interpretation is "mere speculation" that is at odds with the references themselves. *Intellectual Ventures*, 870 F.3d at 1331. The straightforward reading of Hirsch is that Martin is part of the "most approaches" that have disadvantages. Appx0448, Appx0401, Appx1001. In the relevant passage, Hirsch identifies the approaches in three references, one of which is Martin. Of those three references, Martin is the only one that clearly identifies a specific time window for past segments of noisy speech. Appx0448 (citing Appx0452-0455,

Appx1445-1476, Appx1477-1502).  Moreover, the window identified in Martin is a full 1.5 times longer than the window that Hirsch finds acceptable, which is consistent with Hirsch's express statement about segments that are too long. Appx0448, Appx0840-0843.  The Board's finding that Hirsch may not be discussing the length of Martin's past segments of noisy speech is pure conjecture, contradicted by the parties and the references themselves.

> **2.    The Board Improperly Shifted the Burden of Proof to Andrea in Assessing Whether the Time Difference in Past Segments Between Hirsch and Martin is Significant**

The next issue that this Court remanded for the Board to address is whether the time difference between Hirsch's and Martin's algorithms is a "significant difference".  Appx1977.  The Board acknowledges that the parties dispute whether the window 1.5 times longer required by Martin (625 milliseconds) compared to Hirsch's time window (400 milliseconds) is significant.  Appx0010.  The Board rejected the expert opinions from *both parties'* experts on this issue.  Appx0011. The Board finds, however, that it can "discern from the references themselves that Hirsch does not teach away."  Appx011 (quoting *Belden Inc.*, 805 F.3d at 1079 ("Board members, because of expertise, may more often find it easier to understand and soundly explain the teachings and suggestions of prior art without expert assistance.")).

*Belden* is not so broad. Nothing in it permits the Board to create new arguments in its Final Written Decisions. 5 U.S.C. § 554(b)(3), (c), (d). Rather, the portion of *Belden* that the Board cites states that "[n]o rule requires a *Petition* to be accompanied by any declaration." *Belden*, 805 F.3d at 1079 (emphasis added). This is because the burden of proof at institution is merely a "reasonable likelihood of success." 35 U.S.C. § 314(a). The burden of proof on the ultimate conclusion of the IPR, by contrast, is a preponderance of the evidence and that burden is on Petitioner. 35 U.S.C. § 316(e). The Board makes no factual findings on why 225 milliseconds is insignificant and cites to no authority that allows the Board to substitute its unexplained judgment for the evidence that Petitioner has presented. "'[T]he Board cannot simply reach conclusions based on its own understanding or experience—or on its assessment of what would be basic knowledge or common sense,' but instead 'must point to some concrete evidence in the record in support of these findings.'" *PPC Broadband, Inc. v. Iancu*, 739 Fed. App'x 615, 621, 623-24 (Fed. Cir. 2018) (nonprecedential) (vacating and remanding where the Board "failed to offer a reasoned explanation" for its determination of unpatentability).

Moreover, *Belden's* holding is expressly dependent: "What the Board can find without an expert depends on the prior art involved in a particular case." *Belden*, 805 F.3d at 1079. Expert testimony may only be dispensed with "when the references and the invention are easily understandable." *Id.* The Board makes no

findings that the prior art in this case satisfies *Belden's* requirements. *See generally* Appx0010-0011. And it does not. The Board is making an interpretation that expressly contradicts the clearest reading of Hirsch, which specifically says that certain past windows of noisy speech – *i.e.*, Martin's window – are too long. Appx0448.

But, even if this Court disagrees with that reading, the Board recognizes in the next paragraph that "the record lacks evidence of how or if 225 milliseconds would impact Hirsch's system's performance in non-stationary noise settings (i.e., there is no experimental determination in Hirsch as to what would be effective in non-stationary settings and as Martin explained, these values are determined experimentally)." Appx0011. The Board further recognized, "[b]ased on the evidence before us, we have no way to compare Hirsch and Martin with respect to effectiveness in non-stationary noise settings." Appx0012. Accordingly, the Board is not merely explaining "easily understandable" discussion from the references, it is acting as an expert to create new evidence to support Petitioner's position, without the appropriate qualifications, and without giving Andrea the chance to respond. 5 U.S.C. § 554(c); 5 U.S.C. § 556(d); *Hamilton Beach*, 908 F.3d at 1338; *Rovalma*, 856 F.3d at 1029. This is a reversible legal error.

**D.    The Board's Rejection Of Andrea's Argument That Hirsch Obviates The Need To Address Speech Pause Detection Is Arbitrary And Capricious (Third IPR Decision at § C.3)**

This Court further ordered the Board to make factual findings on whether "Hirsch obviates the need to address the speech pause detection problem and, therefore, a skilled artisan would not have looked to Martin to address the problem." Appx1977.  The Board states that it does not "agree [with Andrea] that Hirsch obviates the need to look to Martin's algorithm." Appx0013.  However, the portions of the record that the Board cites in reaching this finding have nothing to do with the question presented.  After again relying on its assumption that Hirsch is silent on non-stationary background noise without citing any evidence, the Board relies on testimony from Petitioner's expert, Dr. Hochwald.  Appx0013-0014.  The Board characterizes Dr. Hochwald's testimony as follow: "[t]he practices followed by the Hirsch authors is consistent [with] the general approach followed by those working in the field of noise reduction, where techniques addressing particular challenges or issues (e.g., noise reduction in nonstationary sound environments) are routinely added to or used to modify an existing noise reduction scheme." Appx0013 (citing Appx0108, Appx0399-0400).  That is plainly not evidence or opinion about whether Hirsch obviates the need to address speech pause detection.  Appx1977.  It is just a conclusory opinion that a POSITA generally looks to optimize.  It says nothing about whether a POSITA would have optimized in the precise manner of the claims nor

whether a POSITA would have looked to Martin, despite Hirsch's express statements about long past windows of noisy speech. This Court has already once reversed the Board's decision because it found that the Board made no specific findings of fact on what "design incentives and other market forces" would have motivated a POSITA to combine. Appx1977. The Board's Third IPR Decision still fails to identify any specifics and thus fares no better.

The law is clear that conclusory testimony, like that relied on by the Board, is not sufficient. *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1327 (Fed. Cir. 2012) ("Rather, the expert's testimony on obviousness was essentially a conclusory statement that a person of ordinary skill in the art would have known, based on the 'modular' nature of the claimed components, how to combine any of a number of references to achieve the claimed inventions. This is not sufficient and is fraught with hindsight bias."). *See also e.g.*, *ActiveVideo Networks*, 694 F.3d at 1328 ("This testimony is generic and bears no relation to any specific combination of prior art elements."); *In re Stepan Co.*, 868 F.3d 1342, 1346 (Fed. Cir. 2017) ("Absent some additional reasoning, the Board's finding that a skilled artisan would have arrived at the claimed invention through routine optimization is insufficient to support a conclusion of obviousness.").

In addition to being conclusory, the Board's decision is arbitrary and capricious because it ignores contradictory portions of the record. The Board

presumes that "Martin provides an effective approach for non-stationary noise settings, and similarly avoids the need for speech pause detection" and therefore agrees that "one skilled in the art would have combined Martin's teachings with those of Hirsch, at least for non-stationary noise settings." Appx0014. The Board cites to nothing to support its determination, presumably relying on its analysis in other sections. Those other sections contain the errors described above and thus provide no support for the Board's determination that Hirsch still needs speech pause detection.

Reversal and/or remand is appropriate because the Board failed to make factual findings that overcome the express teachings in Hirsch that it obviated the need for speech pause detection.

## VII.  HOW THE TEACHINGS OF HIRSCH AND MARTIN ARE COMBINED WAS PART OF THE REMAND

The Board erred by suggesting that the manner in which the teachings of Hirsch and Martin are combined is outside the scope of this remand. Appx0015. The very nature of the proposed modification and combination of Hirsch and Martin goes directly to the issue of whether a POSITA would have been motivated to make the proposed modification and combination in the first place. *See Plas-Pak Indus., Inc. v. Sulzer Mixpac AG*, 600 Fed. App'x 755, 758 (Fed. Cir. 2015) ("combinations that change the 'basic principles under which the [prior art] was designed to

operate'…may fail to support a conclusion of obviousness." (citations omitted)). Given this, the particular nature of the combination must be part of the remand.

The Board's explanation of how Martin's noise estimation algorithm would be incorporated into Hirsch's spectral subtraction system or threshold calculation confirms the Board's improper hindsight analysis. In particular, the Board ignores Andrea's detailed and specific explanation in its Patent Owner Response on how incorporating Martin's noise estimation algorithm would improperly remove Hirsch's recursive noise estimation algorithm – the heart of one of the noise estimation techniques proposed by Hirsch. Appx0768-0771, Appx0448. Instead of addressing Andrea's arguments, the Board summarily dismisses them because Andrea "does not allege any specific fault in the Petition." Appx0015 (citing Appx0768-0771). That finding shifts the burden of proof to Andrea and is contrary to the record. Appx0768-0771.

In its Patent Owner Response, Andrea presented arguments and cited expert testimony explaining how Petitioner's proposed combination of Hirsch with Martin would result in the wholesale replacement of Hirsch's recursive noise estimation algorithm with Martin's noise estimation algorithm and why a POSITA would not have been motivated to make such a modification. Appx0768-0771. Andrea explains in detail the differences between Hirsch's and Martin's noise estimation algorithms, and why they would not have been interchangeable in the manner as

proposed by Petitioner. Specifically, Andrea explained the differences between Hirsch and Martin's algorithms, including that they use different ways to estimate signal properties and have different design preferences. Appx0770-0771 (citing Appx0846-0847). Further, Martin estimates the signal-to-noise ratio, while Hirsch does not use that parameter and makes its calculations with a much simpler algorithm. Appx0770-0771 (citing Appx0846-0847); *see also* Appx0846-0847 (noting that the proposed combination of Hirsch and Martin would completely eliminate the need for Hirsch's recursive noise estimation algorithm).

Notably, the Board did not address any of the differences identified by Andrea and its expert, including why a POSITA would have been motivated to use Martin's signal-to-noise ratio parameter or more complex sub-window scheme, particularly compared to Hirsch's much simpler recursive noise estimation algorithm. *See* Appx0015. Nor does it attempt to justify why a POSITA would have replaced the recursive noise estimation algorithm central to the first noise estimation approach described in Hirsch. *See* Appx0015, Appx0448 (detailing Hirsch's proposed recursive noise estimation algorithm). Andrea also addressed Petitioner's contention that the proposed modification of Hirsch's noise estimation algorithm with Martin's was suggested by the ability to optimize certain parameters. Appx0769. As explained by Andrea's expert, the suggested changes would have significant impacts

on the operation of Hirsch's system, and a POSITA would not have been motivated to make such changes.  Appx0845-0847.

Instead of considering Andrea's detailed arguments and evidence as to why a POSITA would not have made the specific combination of Hirsch and Martin, the Board simply credits the general and conclusory reasons proffered by Petitioner's expert for combining Hirsch and Martin.  Appx0015-0016.  In particular, the Board credited Petitioner's proposed modification because it "is simply 'the general approach followed by those working in the field of noise reduction, where techniques addressing particular challenges or issues (e.g., noise reduction in nonstationary sound environments) are routinely added to or used to modify an existing noise reduction scheme.'"  Appx0016 (citing Appx0108, Appx0399-0400).  This generic, conclusory rationale fails to address the particularized and detailed arguments Andrea raised against the proposed combination of Hirsch and Martin.  *See* Appx0768-0771.  Indeed, as noted by Andrea, the proposed modification would eliminate the very recursive noise estimation algorithm proposed in Hirsch.

The Board further erred by stating that "Patent Owner does not dispute Petitioner's characterization of the common practices in the art."  Appx0016.  The fact that a POSITA may use techniques in the art to modify an existing noise reduction scheme fails to consider the particulars of the techniques being modified.  As explained above, the proposed modification is a wholesale replacement of

Hirsch's recursive noise estimation technique with Martin's approach. The motivations for making such a wholesale replacement are based in hindsight and should be rejected.

Finally, the Board made no finding on reasonable expectation of success, which is also a required showing for an obviousness analysis. *Intelligent Bio-System, Inc. v. Illumina Cambridge Ltd.*, 821 F.3d 1359, 1367-68 (Fed. Cir. 2016). Given that Martin states that it provided "limited" noise suppression in its spectral subtraction results, the Board needed to explain what in the record demonstrates that a POSITA would have expected success in combining these references. This missing finding is particularly acute here because Hirsch itself already demonstrated successful results to solve the problem of speech pause detection. Appx0448; *Personal Web Techs., Inc. v. Apple, Inc.*, 848 F.3d 987, 993-94 (Fed. Cir. 2017). This is particularly true considering the complex audio processing technology at issue. *See Samsung Elecs. Co. v. Elm 3DS Innovations, LLC*, 925 F.3d 1373, 1381-82 (Fed. Cir. 2019) (rejecting petitioner's proposed substitution of elements as obvious because of a lack of specific evidence of a reasonable expectation of success).

## CONCLUSION

For the foregoing reasons, the Board's Remand Decision should be reversed and the claims found not unpatentable.

Date:  May 31, 2023

Respectfully submitted,

Andrew P. Zappia
TROUTMAN PEPPER HAMILTON
SANDERS LLP
70 Linden Oaks, Suite 210
Rochester, NY 14625
(585) 270-2102
andrew.zappia@troutman.com

Frank D. Liu
TROUTMAN PEPPER HAMILTON
SANDERS LLP
High Street Tower, 19th Floor
125 High Street
Boston, MA 02110
(617) 204-5117
frank.liu@troutman.com

Gwendolyn Tawresey
TROUTMAN PEPPER HAMILTON
SANDERS LLP
High Street Tower, 19th Floor
125 High Street
Boston, MA 02110
(617) 204-5132
gwendolyn.tawresey@troutman.com

*Of Counsel for Appellant Andrea
Electronics Corporation*

*/s/William D. Belanger*
William D. Belanger
TROUTMAN PEPPER HAMILTON
SANDERS LLP
High Street Tower, 19th Floor
125 High Street
Boston, MA 02110
(617) 204-5101
william.belanger@troutman.com

*Counsel for Appellant Andrea
Electronics Corporation*

**ADDENDUM**

## INDEX

| DOCUMENT | PAGE |
|---|---|
| Judgment Final Written Decision on Remand Determining Challenged Claims 6-9 Are Unpatentable | Appx0001-0019 |
| U.S. Patent No. 6,363,345 | Appx0020-0039 |

Trials@uspto.gov                                                    Paper 58
571-272-7822                                    Entered: November 29, 2022

UNITED STATES PATENT AND TRADEMARK OFFICE

———————

BEFORE THE PATENT TRIAL AND APPEAL BOARD

———————

APPLE INC.,
Petitioner,

v.

ANDREA ELECTRONICS CORP.,
Patent Owner.

———————

IPR2017-00626
Patent 6,363,345 B1

———————

Before MICHAEL R. ZECHER, JEREMY M. PLENZLER, and
MIRIAM L. QUINN, *Administrative Patent Judges.*

PLENZLER, *Administrative Patent Judge.*

JUDGMENT
Final Written Decision on Remand
Determining Challenged Claims 6–9 Are Unpatentable
*35 U.S.C. §§ 144, 318(a)*

## I.  INTRODUCTION

### A.  Background and Summary

Apple Inc. ("Petitioner") requested *inter partes* review of claims 1–25 and 38–47 of U.S. Patent No. 6,363,345 B1 (Ex. 1001, "the '345 patent").

IPR2017-00626
Patent 6,363,345 B1

Paper 1 ("Pet."). We issued a Decision instituting *inter partes* review. Paper 7 ("Inst. Dec.").

After institution of trial, Andrea Electronics Corp. ("Patent Owner") filed a Patent Owner Response (Paper 11, "PO Resp."), to which Petitioner filed a Reply (Paper 18, "Pet. Reply"). An oral argument was held on April 25, 2018. A transcript of the oral argument is included in the record. Paper 25.

Our Final Written Decision was issued on July 12, 2018. Paper 28 ("Original Decision" or "Original Dec."). The Original Decision determined that Petitioner had established unpatentability of claims 1–3, 12–25, 38, and 47 of the '345 patent, but had not established unpatentability of claims 4–11 and 39–46 of the '345 patent. Original Decision 24.

On appeal, the U.S. Court of Appeals for the Federal Circuit vacated our Original Decision only as to claims 6–9 of the '345 patent and remanded the case for further proceedings. *Apple Inc. v. Andrea Elecs. Corp.*, 949 F.3d 697 (Fed. Cir. 2020). After conferring with the parties, we permitted additional briefing addressing the issues on remand from the Federal Circuit. Paper 36. Petitioner and Patent Owner simultaneously filed opening briefs (Paper 41 ("Pet. Remand Br."); Paper 42 ("PO Remand Br.")), followed by simultaneously filed Reply Briefs (Paper 44 ("Pet. Remand Reply"); Paper 43 ("PO Remand Reply")). After further conferring with the parties, we authorized an additional round of briefing (Paper 45), which was filed to address claim 9 of the '345 patent. Paper 46 ("Pet. Remand Sur-Reply"); Paper 49 ("PO Remand Sur-Reply"). In view of the remand, we issued a Final Written Decision on Remand only as to the patentability of challenged claims 6–9, determining those claims unpatentable. Paper 50 ("Remand Decision" or "Remand Dec.").

IPR2017-00626
Patent 6,363,345 B1

On appeal from our Remand Decision, "[Patent Owner] d[id] not dispute that Martin discloses all of the limitations of claims 6 through 9, with the exception of the step in claim 9 'wherein said future minimum value is set to a current magnitude value periodically.'" *Andrea Elecs. Corp. v. Apple Inc.*, No. 2021-1248, 2022 WL 1197341, at *2 (Fed. Cir. Apr. 22, 2022). The Federal Circuit "affirm[ed] [our] decision finding that Martin discloses the limitations of claim 9." *Id.* at *5. The only issue remaining before us is whether there is sufficient motivation to combine the teachings of Hirsch and Martin with respect to claims 6–9. *Id.*

For the reasons discussed below, we determine that Petitioner has shown by a preponderance of the evidence that one skilled in the art would have been motivated to combine the teachings of Hirsch and Martin with respect to claims 6–9 and, therefore, Petitioner has shown that these claims are unpatentable.

### B. Prior Art and Asserted Grounds Relevant to Remand

Petitioner asserts that claims 6–9 would have been unpatentable based on the following ground, which is the ground remaining for consideration on remand:

| Claim(s) Challenged | 35 U.S.C. § | Reference(s)/Basis |
|---|---|---|
| 6–9 | 103 | Hirsch[1], Martin[2] |

### C. CAFC Remand

On appeal, the Federal Circuit held that our Remand Decision erred by failing to properly analyze the motivation to combine the teachings of

---

[1] H.G. Hirsch & C. Ehrlicher, "*Noise Estimation Techniques for Robust Speech Recognition*," IEEE 1995 (Ex. 1005, "Hirsch").
[2] Ranier Martin, "*An Efficient Algorithm to Estimate the Instantaneous SNR of Speech Signals*," Eurospeech 1993 (Ex. 1006, "Martin").

IPR2017-00626
Patent 6,363,345 B1

Hirsch with those of Martin with respect to claims 6–9.  *Andrea*, 2022 WL 1197341, at *1, 5.

## II.  ANALYSIS

### A.  *Scope of Remand*

There is no remaining dispute as to whether the combination of Hirsch and Martin teaches the limitations of claims 6–9.  Hirsch teaches the noise cancelling apparatus recited in claim 1, including the threshold detector recited in that claim, as well as the additional details of that threshold detector recited in claims 4 and 5 depending from claim 1.  *See* Original Dec. 6–7, 24; Remand Dec. 6.  Martin teaches a threshold detector having the additional features recited in claims 6–9, which depend from claim 5.  *See* Remand Dec. 6–17.

In its remand decision, the Federal Circuit stated that "Hirsch does refer to Martin as a known approach to avoid the problem of speech pause detection to estimate noise and, based on that, it was reasonable for the Board to find that a skilled artisan would have considered Martin's teachings generally when reviewing Hirsch."  *Andrea*, 2022 WL 1197341, at *5.  The Federal Circuit remanded for us to "address[] why a skilled artisan would have specifically incorporated Martin's noise power estimation algorithm into Hirsch's spectral subtraction system or threshold calculation" and to "address[] any of the specific motivation issues contested by [Patent Owner]."  *Id.*  Accordingly, the Federal Circuit remanded solely "for further findings on the motivation to combine Hirsch and Martin with respect to claims 6–9."  *Id.*  That is, the scope of the remand is limited and requires us to make specific fact findings related to *whether/why* Martin's noise power estimation algorithm would have been incorporated into Hirsch.

### B.  Petitioner's Combination

With respect to claims 6–9, Petitioner's combination of Martin's teachings with those of Hirsch is "to incorporate Martin's technique for estimating the noise floor of a signal within Hirsch's adaptive threshold calculation to improve operation of Hirsch's system in non-stationary noise settings."  Pet. 35 (citing Ex. 1003 ¶¶ 129–132).

At this stage of the proceeding, there is no dispute that Hirsch specifically identifies the problem of speech pause detection to estimate noise, and specifically identifies Martin as a solution to that problem, particularly in non-stationary noise settings.  Petitioner contends that because "Hirsch . . . did not test its system with non-stationary noise signals" and "Martin . . . indicates that its noise floor estimation technique provided good results in both stationary and non-stationary noise settings," one skilled in the art would have been "motivated . . . to alter Hirsch's scheme to use the Martin noise floor estimation technique."  Pet. 35–36 (citing Ex. 1005, 154; Ex. 1006, 1095–1096; Ex. 1003 ¶¶ 128–129, 132).  We agree.

The cited portions of Martin support Petitioner's position.  *See* Ex. 1006, 1095–1096 (discussing testing of the algorithm in non-stationary noise settings and concluding that the arrangement "provides a computational[ly] inexpensive and effective mean to cope with th[e] problem").  And there is no dispute that Hirsch is silent as to the effectiveness of its technique in non-stationary noise environments.  *See* Pet. 35 ("Hirsch explains its noise estimation scheme worked well for stationary noise signals, but did not test its system with non-stationary noise signals.") (citing Ex. 1005, 154); PO Resp. 38 ("Hirsch includes no explanation as to why Hirsch elected to test his techniques only in stationary noise environments.") (citing Ex. 2002 ¶ 87); PO Remand Br. 5 ("Nothing in

IPR2017-00626
Patent 6,363,345 B1

Hirsch discusses how its algorithm might perform in non-stationary noise environments.") (citing Ex. 2002 ¶ 88). Hirsch, however, acknowledges that "detection of speech pauses to evaluate segments of pure noise . . . is a difficult task especially if the background noise is not stationary or the signal-to-noise ratio (SNR) is low." Ex. 1005, 153.

Petitioner presents sufficient reasoning to incorporate Martin's algorithm into Hirsch's system because Hirsch, itself, notes the difficulty of addressing non-stationary noise environments, while leaving unaddressed whether its system would be effective in such environments. Martin, on the other hand, is expressly referenced in Hirsch as a known solution to the problem identified in Hirsch, and provides a noise floor algorithm that provides *good results* in non-stationary noise environments.

Patent Owner disputes various aspects of the rationale provided by Petitioner, which we address in more detail below. Based on the record before us, however, the preponderance of the evidence supports Petitioner's position that one skilled in the art would have appreciated that Martin provides a proven way to deal with non-stationary noise environments that one skilled in the art would have been motivated to substitute into Hirsch's system based on Hirsch's identification of this known problem and Martin as a known solution to this problem.

IPR2017-00626
Patent 6,363,345 B1

### C.  Patent Owner's Rebuttal

*1.  Whether Hirsch shows a need for improvement in non-stationary noise environments and whether Martin provides such improvement*

Patent Owner contends that "there is no basis that a skilled artisan would have concluded that Hirsch's noise estimation techniques needed to be improved in non-stationary noise environments."  PO Resp. 37.  Patent Owner acknowledges that "Hirsch appears to have only tested its techniques in stationary noise settings, but [contends that] there is no evidence suggesting that Hirsch's techniques would not work well, or would need to be improved, in non-stationary noise environments."  *Id.* at 37–38.  Patent Owner contends that "Hirsch does not disclose that its techniques would perform worse or not as well in non-stationary noise environments and Hirsch includes no explanation as to why Hirsch elected to test his techniques only in stationary noise environments."  *Id.* at 38.  We agree that Hirsch is silent on whether its system needed improvement in non-stationary noise settings because Hirsch says nothings about its performance in non-stationary noise settings.  Compared to Hirsch's unproven system, Martin's system is an improvement in non-stationary noise settings by virtue of being a system tested and shown to be effective in such settings, as explained below.

There is no dispute that Martin provides an "approach[] known to avoid the problem of speech pause detection and to estimate the noise characteristics just from a past segment of noisy speech," as acknowledged by Hirsch, itself.  Ex. 1005, 153; *see also* PO Resp. 35.  Martin's "algorithm is capable to track non[-]stationary noise signals and has a low computational complexity."  Ex. 1006, 1093.  Martin tested its algorithm with non-stationary noise and concluded that "[v]arying noise levels have a

significant impact on the performance of many speech processing algorithms" and "[t]he algorithm proposed in [Martin] provides a computational[ly] inexpensive and effective mean to cope with this problem." *Id.* at 1095–1096.

Patent Owner disagrees with the effectiveness of Martin's algorithm. Specifically, Patent Owner contends that "Martin does not report that the use of his algorithm in his experiments produced good results in cases of non-stationary noise environments." PO Resp. 37 (citing Ex. 1006, 1094); *see also id.* 39 (citing Ex. 2002 ¶ 87). Patent Owner additionally contends that "Martin also reports less-than-satisfactory results when his algorithm was applied to a spectral subtraction scheme." *Id.* at 39 (citing Ex. 2002 ¶ 87). This is inconsistent with the express teachings of Martin discussed above. We credit Dr. Hochwald's testimony in this regard, over that of Dr. Douglas, because Dr. Hochwald's testimony is consistent with the disclosure of Martin. *See, e.g.*, Ex. 1003 ¶¶ 128–129 ("Martin explains that the noise floor algorithm is particularly suited to identifying noise in a frequency bin during active speech [Martin, pg. 1094]" and "Martin's algorithm has some advantages in that it had been tested to work well with non-stationary noise.").

Patent Owner and Dr. Douglas focus on inaccuracies discussed in Martin during certain circumstances, but fail to address the expressly stated overall effectiveness of Martin's algorithm in non-stationary noise settings as discussed above. *See, e.g.*, Ex. 1006, 1095–1096. Dr. Douglas, for example, testifies that "Martin concluded that . . . his algorithm did not produce good results during periods of nonspeech activity," with little explanation, other than asserting that "Martin states on page 1095 that his 'estimate is biased when no speech is present' and states on page 1096 that

IPR2017-00626
Patent 6,363,345 B1

his 'algorithm is accurate for medium to high SNR conditions, but necessarily biased when no speech is present.'" Ex. 2002 ¶ 87.

Although Martin explains that "[t]he algorithm is accurate for medium to high SNR conditions but necessarily biased when no speech is present," that bias is described as "slightly biased" in the preceding paragraph, which Patent Owner acknowledges (PO Resp. 39). *See* Ex. 1006, 1096. We do not agree with the characterization of Martin's algorithm as being ineffective for non-stationary noise situations when applied to a spectral subtraction scheme because such a determination would ignore the express characterization in Martin that its algorithm is, in fact, "a computational[ly] inexpensive and effective mean to cope with th[e] problem." *Id.*

2. *Whether Hirsch disparages Martin because of the difference in length of past segments of noise speech and alleged significant difference in time requirements between Martin and Hirsch*

Patent Owner contends that "Hirsch immediately disparages techniques like Martin's, explaining that '[t]he disadvantage of most approaches is the need of relatively long past segments of noisy speech.'" PO Resp. 35 (quoting Ex. 1005, 153). Patent Owner contends that "[t]he relevant time frames of noisy speech segments required by the systems described in Hirsch and Martin confirm Hirsch's criticism of Martin . . . a significant difference of more than 50%." *Id.* (citing Ex. 2002 ¶¶ 83–84). We disagree with Patent Owner that one skilled in the art would not have looked to Martin's teachings regarding estimating the noise floor of a signal in non-stationary noise settings because Hirsch allegedly disparages Martin. *See id.* at 35–36.

Hirsch states that "[s]ome approaches are known to avoid the problem of speech pause detection and to estimate the noise characteristics just from

IPR2017-00626
Patent 6,363,345 B1

a past segment of noisy speech." Ex. 1005, 153 (citing Martin and two other references). Hirsch further explains that "[t]he disadvantage of *most* approaches is the need of relatively long past segments of noisy speech" without specifying the time period that constitutes "a relatively long past segment" or if Martin is one "of most approaches." *Id.* (emphasis added).

We read Hirsch as simply describing alternate approaches. *See In re Fulton*, 391 F.3d 1195, 1201 (Fed. Cir. 2004) (The "mere disclosure of alternative designs does not teach away."). "A reference that 'merely expresses a general preference for an alternative invention but does not criticize, discredit, or otherwise discourage investigation into' the claimed invention does not teach away." *Meiressone v. Google, Inc.*, 849 F.3d 1379, 1382–83 (Fed. Cir. 2017) (citing *Galderma Labs., L.P. v. Tolmar, Inc.*, 737 F.3d 731, 738 (Fed. Cir. 2013) and finding that a reference that provided a feature that may have been inferior to another does not teach away from its use because it does not amount to criticizing or promoting abandonment of that feature). Martin's algorithm requires 625 milliseconds to estimate noise, whereas Hirsch needs past noisy segments of about 400 milliseconds. The parties proffer competing testimony as to whether the 225 millisecond difference is significant. *See* Ex. 1003 ¶ 129; Ex. 2002 ¶ 85.

Dr. Hochwald testifies that "[t]o a person knowledgeable in the arts, the difference between 0.4 seconds and 0.625 seconds is not very significant in capturing speech data" without further evidence or explanation to support that conclusion. Ex. 1003 ¶ 129. Dr. Douglas testifies without further evidence or explanation that "[i]n [his] opinion a skilled artisan would have thought that in the context of Hirsch's and Martin's disclosures the difference between 625 milliseconds and 400 milliseconds is significant." Ex. 2002 ¶ 85. Neither testimony is helpful because those statements

IPR2017-00626
Patent 6,363,345 B1

present conclusory statements as to the significance of the 225 milliseconds difference. However, we can discern from the references themselves that Hirsch does not teach away. *See Belden Inc. v. Berk-Tek LLC*, 805 F.3d 1064, 1079 (Fed. Cir. 2015) ("Board members, because of expertise, may more often find it easier to understand and soundly explain the teachings and suggestions of prior art without expert assistance.").

As explained above, the 400 millisecond scenario in Hirsch is discussed in connection with evaluation of stationary noise signals. The record is silent about the effectiveness of Hirsch's 400 millisecond sample size in non-stationary noise settings. Martin, on the other hand, specifically tailors its window length to non-stationary noise settings, explaining that "[t]he window length . . . must be large enough to bridge any peak of speech activity, but short enough to follow non[-]stationary noise variations" and "[e]xperiments . . . have shown that a window length of 0.625 s is a good value." Ex. 1006, 1094. Thus, we understand Martin's 625 milliseconds as being just one value that was found to be effective experimentally ("a good value") in non-stationary noise settings. We, therefore, find unpersuasive Patent Owner's position that 225 milliseconds is a significant difference when the record lacks evidence of how or if 225 milliseconds would impact Hirsch's system's performance in non-stationary noise settings (i.e., there is no experimental determination in Hirsch as to what would be effective in non-stationary settings and as Martin explained, these values are determined experimentally).

But even if we accept Patent Owner's position that Hirsch's 225 millisecond difference is significant, and assume (without any factual basis from Patent Owner) that such a difference would remain even in non-stationary noise settings, that is still not a reason to find that Hirsch teaches

IPR2017-00626
Patent 6,363,345 B1

away from Martin.  Based on the evidence before us, we have no way to compare Hirsch and Martin with respect to effectiveness in non-stationary noise settings.  But between Hirsch and Martin, Martin is the only reference that expressly states its effectiveness in non-stationary noise settings.  *See* Ex. 1006, 1096; PO Remand Br. 5 (Patent Owner acknowledging "[n]othing in Hirsch discusses how its algorithm might perform in non-stationary noise environments.").  That is, Hirsh's disclosure of a shorter window length for stationary noise settings does not disparage or discourage the use of Martin's techniques, known to be effective for non-stationary noise settings, even if Martin's technique uses a window length that is 225 milliseconds longer than Hirsch's.

And, again, assuming that the shorter timeframe in Hirsch applies to non-stationary noise settings, it is not necessarily an improvement over Martin.  Rather, one skilled in the art would have appreciated the benefits of a proven system to handle an identified problem (e.g., the algorithm of Martin addressing the problem identified in Hirsch) as a tradeoff to the unproven system of Hirsch in non-stationary noise settings (at least based on the evidence before us) with potentially shorter sample times required.  *See Allied Erecting and Dismantling Co. v. Genesis Attachments, LLC*, 825 F.3d 1373, 1381 (Fed. Cir. 2016) ("A given course of action often has simultaneous advantages and disadvantages, and this does not necessarily obviate motivation to combine.") (quoting *Medichem, S.A. v. Rolabo, S.L.*, 437 F.3d 1157, 1165 (Fed. Cir. 2006)).

As Petitioner notes, "Dr. Hochwald [testifies that] Hirsch's prior article [(Ex. 1032)] recognizes that there is a tradeoff between the accuracy of a noise estimate and the ability to adapt to the noise and that the optimum choice of window depends on the nature of the speech signals being

12

IPR2017-00626
Patent 6,363,345 B1

considered." Pet. Reply 17 (citing Ex. 1023 ¶¶ 33, 37). We credit the testimony of Dr. Hochwald because it is consistent with and supported by the disclosure of the prior article referenced in that testimony. *See* Ex. 1032, 24 (discussing window length relative to accuracy).

The preponderance of the evidence supports Petitioner's position that Martin provides an effective noise floor algorithm in non-stationary noise settings and that Hirsch would not discourage one skilled in the art from looking to Martin's teachings regarding that algorithm. Rather, based on the express reference to Martin in Hirsch, Martin's discussion of its favorable results in non-stationary noise situations, and Hirsch's silence with respect to its effectiveness in non-stationary noise settings, one skilled in the art would have been motivated to look to Martin's noise floor algorithm.

3.  *Whether Hirsch obviates the need to address the speech pause detection problem and, therefore, a skilled artisan would not have looked to Martin to address the problem*

Patent Owner additionally contends that "a skilled artisan would not look to this disclosure in Martin as reason to improve Hirsch because Hirsch's techniques similarly obviate the need for speech pause detection," but acknowledges that "Hirsch notes that Martin's algorithm avoids the problem of speech pause detection." PO Resp. 36. For the various reasons explained above, we do not agree that Hirsch obviates the need to look to Martin's algorithm.

As explained above, Hirsch notes the difficulties typically associated with non-stationary background noise, but does not specifically discuss the effectiveness of its algorithm in non-stationary noise settings, which is the purpose for Petitioner's proposed combination with Martin's teachings. Petitioner contends that "[t]he practices followed by the Hirsch authors is

IPR2017-00626
Patent 6,363,345 B1

consistent [with] the general approach followed by those working in the field of noise reduction, where techniques addressing particular challenges or issues (e.g., noise reduction in nonstationary sound environments) are routinely added to or used to modify an existing noise reduction scheme." Pet. 35 (citing Ex. 1003 ¶¶ 125–126). Petitioner's contentions regarding "the general approach followed by those working in the field of noise reduction" noted above are supported by the testimony of Dr. Hochwald noted above (Ex. 1003 ¶¶ 125–26) and are not disputed by Patent Owner.

Because Martin provides an effective approach for non-stationary noise settings, and similarly avoids the need for speech pause detection, we agree with Petitioner's contentions that one skilled in the art would have combined Martin's teachings with those of Hirsch, at least for non-stationary noise settings. Hirsch identifies problems with speech pause detection, but discusses effectiveness of its system only with respect to stationary noise settings. We do not agree that this obviates the need to address speech pause detection in *all* settings, particularly when Hirsch, itself, identifies the difficulties associated with non-stationary noise settings, but fails to address effectiveness of its system in such settings. *See* Ex. 1005, 153–154.

IPR2017-00626
Patent 6,363,345 B1

### 4. How the teachings of Hirsch and Martin are combined

The manner in which the teachings of Hirsch and Martin are combined (i.e., how the teachings are combined) does not appear to be within the scope of this remand. As explained above, in its decision, the Federal Circuit understood the "*how*" to be "specifically incorporat[ing] Martin's noise power estimation algorithm into Hirsch's spectral subtraction system or threshold calculation" and remanded for us to provide specific findings related to *why* a one skilled in the art would have made that modification. *See Andrea*, 2022 WL 1197341, at *5.

Nevertheless, to the extent we misunderstood the Federal Circuit's remand instructions, and "*how*" the teachings of Hirsch and Martin are combined is still at issue, we address Patent Owner's contention that "[Petitioner] fails to sufficiently explain how or why various elements from the two systems described in Hirsch and Martin would be combined in the manner as the elements are arranged in the claim." PO Resp. 40. Patent Owner refers to various portions of Dr. Hochwald's testimony, but does not allege any specific fault in the Petition. *See id.* at 40–43.

As noted above, Petitioner explains that the proposed modification "would have been to incorporate Martin's technique for estimating the noise floor of a signal within Hirsch's adaptive threshold calculation to improve operation of Hirsch's system in non-stationary noise settings." Pet. 35; *see also* Pet. Reply 20 ("The one simple alteration, as Dr. Hochwald explained, is modifying Hirsch's adaptive threshold calculation 'to use Martin's noise floor algorithm instead of Hirsch's running average algorithm for deciding the threshold in each frequency bin'" with "[t]he other steps in Hirsch . . . remain[ing] unaltered.") (citing Ex. 1003 ¶¶ 127–130). We determine that this explanation by Petitioner sufficiently explains how to combine the

15

IPR2017-00626
Patent 6,363,345 B1

teachings of Hirsch with those of Martin. And as explained above, the Federal Circuit understood this to be the "*how*" as well. *See Andrea*, 2022 WL 1197341, at *5.

According to Petitioner, and we agree, "[a] skilled person would have recognized the Martin technique could be used in place of the analogous determination being made in Hirsch for each frequency bin." Pet. 37 (citing Ex. 1003 ¶ 130). We understand Petitioner's proposed modification to be a substitution specifically of Martin's noise floor algorithm into Hirsch's system. As noted above, Petitioner's proposed modification is simply "the general approach followed by those working in the field of noise reduction, where techniques addressing particular challenges or issues (e.g., noise reduction in nonstationary sound environments) are routinely added to or used to modify an existing noise reduction scheme." Pet. 35 (citing Ex. 1003 ¶¶ 125–126). That is, this proposed modification would have been within the level of skill in the art and would have been met with a reasonable expectation of success. *See Amgen Inc. v. F. Hoffman-LA Roche Ltd.*, 580 F.3d 1340, 1362 (Fed. Cir. 2009) ("An obviousness determination requires that a skilled artisan would have perceived a reasonable expectation of success in making the invention in light of the prior art."). Patent Owner does not dispute Petitioner's characterization of the common practices in the art.

Based on the record before us, Petitioner provides sufficient explanation of how the alleged teachings of Hirsch and Martin would have been combined in the proposed modification as noted above.

## D. *Summary*

As explained above, Hirsch notes the difficulty of addressing non-stationary noise environments, but does not provide results regarding the

16

IPR2017-00626
Patent 6,363,345 B1

performance of its system in such environments. Martin provides a noise floor algorithm that provides good results in non-stationary noise environments. Based on the record before us, one skilled in the art would have appreciated that Martin provides a proven way to deal with non-stationary noise environments that one skilled in the art would have been motivated to substitute into Hirsch's system based on Hirsch's identification of this known problem and identification of Martin as a known solution to this problem. Consequently, Petitioner has presented sufficient evidence to support its reasoning as to why one skilled in the art would have been motivated to combine the teachings of Hirsch and Martin with respect to claims 6–9.

## III. CONCLUSION[3]

In summary:

| Claims | 35 U.S.C. § | Reference(s)/Basis | Claims Shown Unpatentable | Claims Not shown Unpatentable |
|--------|-------------|--------------------|--------------------------|------------------------------|
| 6–9 | 103 | Hirsch, Martin | 6–9 | |

## IV. ORDER

In consideration of the foregoing, it is hereby:

---

[3] Should Patent Owner wish to pursue amendment of the challenged claims in a reissue or reexamination proceeding subsequent to the issuance of this Decision, we draw Patent Owner's attention to the April 2019 *Notice Regarding Options for Amendments by Patent Owner Through Reissue or Reexamination During a Pending AIA Trial Proceeding. See* 84 Fed. Reg. 16,654 (Apr. 22, 2019). If Patent Owner chooses to file a reissue application or a request for reexamination of the challenged patent, we remind Patent Owner of its continuing obligation to notify the Board of any such related matters in updated mandatory notices. *See* 37 C.F.R. § 42.8(a)(3), (b)(2).

IPR2017-00626
Patent 6,363,345 B1

ORDERED that Petitioner has established by a preponderance of the evidence that claims 6–9 of the '345 patent are unpatentable; and

FURTHER ORDERED that, because this is a Final Written Decision on Remand, parties to this proceeding seeking judicial review of the Decision must comply with the notice and service requirements of 37 C.F.R. § 90.2.

18

IPR2017-00626
Patent 6,363,345 B1

FOR PETITIONER:

Jeffrey Kushan
Steven Baik
Thomas Broughan
SIDLEY AUSTIN LLP
jkushan@sidley.com
sbaik@sidley.com
tbroughan@sidley.com


FOR PATENT OWNER:

William Belanger
Andrew Zappia
TROUTMAN PEPPER
william.belanger@troutman.com
andrew.zappia@troutman.com


Andrew Schultz
Griffin Mesmer
Frank Liu
PEPPER HAMILTON LLP
schultza@pepperlaw.com
mesmerg@pepperlaw.com
liuf@pepperlaw.com

19

US006363345B1

(12) **United States Patent**
Marash et al.

(10) **Patent No.:**    **US 6,363,345 B1**
(45) **Date of Patent:**    **Mar. 26, 2002**

(54) **SYSTEM, METHOD AND APPARATUS FOR CANCELLING NOISE**

(75) Inventors: **Joseph Marash**, Haifa; **Baruch Berdugo**, Kiriat-Ata, both of (IL)

(73) Assignee: **Andrea Electronics Corporation**, Melville, NY (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **09/252,874**

(22) Filed: **Feb. 18, 1999**

(51) Int. Cl.[7] ............................................... **G10L 21/02**

(52) **U.S. Cl.** ........................ **704/226**; 704/233; 704/205

(58) **Field of Search** ................................. 704/270, 500, 704/233, 200, 201, 205, 226, 227, 228, 211, 216; 379/22.08, 392.01, 3, 406.01, 406.12, 406.13, 406.14, 406.05

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2,379,514 A | 7/1945 | Fisher |
| 2,972,018 A | 2/1961 | Hawley et al. |
| 3,098,121 A | 7/1963 | Wadsworth |
| 3,101,744 A | 8/1963 | Warnaka |

(List continued on next page.)

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| DE | 2640324 | 3/1978 |
| DE | 3719963 | 3/1988 |
| DE | 4008595 | 9/1991 |
| EP | 0 059 745 B1 | 9/1982 |
| EP | 0 380 290 A2 | 8/1990 |
| EP | 0 390 386 | 10/1990 |
| EP | 0 411 360 B1 | 2/1991 |
| EP | 0 509 742 A2 | 10/1992 |
| EP | 0 483 845 | 1/1993 |

(List continued on next page.)

OTHER PUBLICATIONS

B.D. Van Veen and K.M. Buckley, "Beamforming: A Versatile Approach to Spatial Filtering", IEEE ASSN Magazine, vol. 5, No. 2, Apr. 1988, pp. 4–24.
Beranek, *Acoustics* (American Institute of Physics, 1986) pp. 116–135.
Boll, IEEE Trans. on Acous., vol. ASSP–27, No. 2, Apr. 1979, pp. 113–120.
Daniel Sweeney, "Sound Conditioning Through DSP", The Equipment Authority, 1994.

(List continued on next page.)

*Primary Examiner*—Richmond Dorvil
(74) *Attorney, Agent, or Firm*—Frommer Lawrence & Haug; Thomas J. Kowalski

(57) **ABSTRACT**

A threshold detector precisely detects the positions of the noise elements, even within continuous speech segments, by determining whether frequency spectrum elements, or bins, of the input signal are within a threshold set according to current and future minimum values of the frequency spectrum elements. In addition, the threshold is continuously set and initiated within a predetermined period of time. The estimate magnitude of the input audio signal is obtained using a multiplying combination of the real and imaginary part of the input in accordance with the higher and lower values between the real and imaginary part of the signal. In order to further reduce instability of the spectral estimation, a two-dimensional smoothing is applied to the signal estimate using neighboring frequency bins and an exponential average over time. A filter multiplication effects the subtraction thereby avoiding phase calculation difficulties and effecting full-wave rectification which further reduces artifacts. Since the noise elements are determined within continuous speech segments, the noise is canceled from the audio signal nearly continuously thereby providing excellent noise cancellation characteristics. Residual noise reduction reduces the residual noise remaining after noise cancellation. Implementation may be effected in various noise canceling schemes including adaptive beamforming and noise cancellation using computer program applications installed as software or hardware.

**47 Claims, 10 Drawing Sheets**



Noise Processing

Petitioner Apple Inc.
Ex. 1001, p. 1

#### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3,170,046 | A | 2/1965 | Leale |
| 3,247,925 | A | 4/1966 | Warnaka |
| 3,262,521 | A | 7/1966 | Warnaka |
| 3,298,457 | A | 1/1967 | Warnaka |
| 3,330,376 | A | 7/1967 | Warnaka |
| 3,394,226 | A | 7/1968 | Andrews, Jr. |
| 3,416,782 | A | 12/1968 | Warnaka |
| 3,422,921 | A | 1/1969 | Warnaka |
| 3,562,089 | A | 2/1971 | Warnaka et al. |
| 3,702,644 | A | 11/1972 | Fowler et al. |
| 3,830,988 | A | 8/1974 | Mol et al. |
| 3,889,059 | A | 6/1975 | Thompson et al. |
| 3,890,474 | A | 6/1975 | Glicksberg |
| 4,068,092 | A | 1/1978 | Ikoma et al. |
| 4,122,303 | A | 10/1978 | Chaplin et al. |
| 4,153,815 | A | 5/1979 | Chaplin et al. |
| 4,169,257 | A | 9/1979 | Smith |
| 4,239,936 | A | 12/1980 | Sakoe |
| 4,241,805 | A | 12/1980 | Chance, Jr. |
| 4,243,110 | A | 1/1981 | Warnaka |
| 4,261,708 | A | 4/1981 | Gallagher |
| 4,321,970 | A | 3/1982 | Thigpen |
| 4,334,740 | A | 6/1982 | Wray |
| 4,339,018 | A | 7/1982 | Warnaka |
| 4,363,007 | A | 12/1982 | Haramoto et al. |
| 4,409,435 | A | 10/1983 | Ono |
| 4,417,098 | A | 11/1983 | Chaplin et al. |
| 4,433,435 | A | 2/1984 | David |
| 4,442,546 | A | 4/1984 | Ishigaki |
| 4,453,600 | A | 6/1984 | Thigpen |
| 4,455,675 | A | 6/1984 | Bose et al. |
| 4,459,851 | A | 7/1984 | Crostack |
| 4,461,025 | A | 7/1984 | Franklin |
| 4,463,222 | A | 7/1984 | Poradowski |
| 4,473,906 | A | 9/1984 | Warnaka et al. |
| 4,477,505 | A | 10/1984 | Warnaka |
| 4,489,441 | A | 12/1984 | Chaplin et al. |
| 4,490,841 | A | 12/1984 | Chaplin et al. |
| 4,494,074 | A | 1/1985 | Bose |
| 4,495,643 | A | 1/1985 | Orban |
| 4,517,415 | A | 5/1985 | Laurence |
| 4,527,282 | A | 7/1985 | Chaplin et al. |
| 4,530,304 | A | 7/1985 | Gardos |
| 4,539,708 | A | 9/1985 | Norris |
| 4,559,642 | A | 12/1985 | Miyaji et al. |
| 4,562,589 | A | 12/1985 | Warnaka et al. |
| 4,566,118 | A | 1/1986 | Chaplin et al. |
| 4,570,155 | A | 2/1986 | Skarman et al. |
| 4,581,758 | A | 4/1986 | Coker et al. |
| 4,589,136 | A | 5/1986 | Poldy et al. |
| 4,589,137 | A | 5/1986 | Miller |
| 4,600,863 | A | 7/1986 | Chaplin et al. |
| 4,622,692 | A | 11/1986 | Cole |
| 4,628,529 | A | 12/1986 | Borth et al. |
| 4,630,302 | A | 12/1986 | Kryter |
| 4,630,304 | A | 12/1986 | Borth et al. |
| 4,636,586 | A | 1/1987 | Schiff |
| 4,649,505 | A | 3/1987 | Zinser, Jr. et al. |
| 4,653,102 | A | 3/1987 | Hansen |
| 4,653,606 | A | 3/1987 | Flanagan |
| 4,654,871 | A | 3/1987 | Chaplin et al. |
| 4,658,426 | A | 4/1987 | Chabries et al. |
| 4,672,674 | A | 6/1987 | Clough et al. |
| 4,683,010 | A | 7/1987 | Hartmann |
| 4,696,043 | A | 9/1987 | Iwahara et al. |
| 4,718,096 | A | 1/1988 | Meisel |
| 4,731,850 | A | 3/1988 | Levitt et al. |
| 4,736,432 | A | 4/1988 | Cantrell |
| 4,741,018 | A | 4/1988 | Elko et al. |
| 4,750,207 | A | 6/1988 | Gebert et al. |
| 4,752,961 | A | 6/1988 | Kahn |
| 4,769,847 | A | 9/1988 | Taguchi |
| 4,771,472 | A | 9/1988 | Williams, III et al. |
| 4,783,798 | A | 11/1988 | Leibholz et al. |
| 4,783,817 | A | 11/1988 | Hamada et al. |
| 4,783,818 | A | 11/1988 | Graupe et al. |
| 4,791,672 | A | 12/1988 | Nunley et al. |
| 4,802,227 | A | 1/1989 | Elko et al. |
| 4,811,404 | A | 3/1989 | Vilmur et al. |
| 4,833,719 | A | 5/1989 | Carme et al. |
| 4,837,832 | A | 6/1989 | Fanshel |
| 4,847,897 | A | 7/1989 | Means |
| 4,862,506 | A | 8/1989 | Landgarten et al. |
| 4,878,188 | A | 10/1989 | Ziegler et al. |
| 4,908,855 | A | 3/1990 | Ohga et al. |
| 4,910,718 | A | 3/1990 | Horn |
| 4,910,719 | A | 3/1990 | Thubert |
| 4,928,307 | A | 5/1990 | Lynn |
| 4,930,156 | A | 5/1990 | Norris |
| 4,932,063 | A | 6/1990 | Nakamura |
| 4,937,871 | A | 6/1990 | Hattori |
| 4,947,356 | A | 8/1990 | Elliott et al. |
| 4,951,954 | A | 8/1990 | MacNeill |
| 4,955,055 | A | 9/1990 | Fujisaki et al. |
| 4,956,867 | A | 9/1990 | Zarek et al. |
| 4,959,865 | A | 9/1990 | Stettiner et al. |
| 4,963,071 | A | 10/1990 | Larwin et al. |
| 4,965,834 | A | 10/1990 | Miller |
| 4,977,600 | A | 12/1990 | Ziegler |
| 4,985,925 | A | 1/1991 | Langberg et al. |
| 4,991,433 | A | 2/1991 | Warnaka et al. |
| 5,001,763 | A | 3/1991 | Moseley |
| 5,010,576 | A | 4/1991 | Hill |
| 5,018,202 | A | 5/1991 | Takahashi et al. |
| 5,023,002 | A | 6/1991 | Schweizer et al. |
| 5,029,218 | A | 7/1991 | Nagayasu |
| 5,046,103 | A | 9/1991 | Warnaka et al. |
| 5,052,510 | A | 10/1991 | Gossman |
| 5,070,527 | A | 12/1991 | Lynn |
| 5,075,694 | A | 12/1991 | Donnangelo et al. |
| 5,086,385 | A | 2/1992 | Launey et al. |
| 5,086,415 | A | 2/1992 | Takahashi et al. |
| 5,091,954 | A | 2/1992 | Sasaki et al. |
| 5,097,923 | A | 3/1992 | Ziegler et al. |
| 5,105,377 | A | 4/1992 | Ziegler, Jr. |
| 5,117,461 | A | 5/1992 | Moseley |
| 5,121,426 | A | 6/1992 | Bavmhauer |
| 5,125,032 | A | 6/1992 | Meister et al. |
| 5,126,681 | A | 6/1992 | Ziegler, Jr. et al. |
| 5,133,017 | A | 7/1992 | Cain et al. |
| 5,134,659 | A | 7/1992 | Moseley |
| 5,138,663 | A | 8/1992 | Moseley |
| 5,138,664 | A | 8/1992 | Kimura et al. |
| 5,142,585 | A | 8/1992 | Taylor |
| 5,192,918 | A | 3/1993 | Sugiyama |
| 5,208,864 | A | 5/1993 | Kaneda |
| 5,209,326 | A | 5/1993 | Harper |
| 5,212,764 | A | 5/1993 | Ariyoshi |
| 5,219,037 | A | 6/1993 | Smith et al. |
| 5,226,077 | A | 7/1993 | Lynn et al. |
| 5,226,087 | A | 7/1993 | Ono |
| 5,241,692 | A | 8/1993 | Harrison et al. |
| 5,251,263 | A | 10/1993 | Andrea et al. |
| 5,251,863 | A | 10/1993 | Gossman et al. |
| 5,260,997 | A | 11/1993 | Gattey et al. |
| 5,272,286 | A | 12/1993 | Cain et al. |
| 5,276,740 | A | 1/1994 | Inanaga et al. |
| 5,311,446 | A | 5/1994 | Ross et al. |
| 5,311,453 | A | 5/1994 | Deneberg et al. |
| 5,313,555 | A | 5/1994 | Kamiya |
| 5,313,945 | A | 5/1994 | Friedlander |

Petitioner Apple Inc.
Ex. 1001, p. 2

| | | | |
|---|---|---|---|
| 5,315,661 A | 5/1994 | Gossman et al. | |
| 5,319,736 A | 6/1994 | Hunt | |
| 5,327,506 A | 7/1994 | Stites, III | |
| 5,332,203 A | 7/1994 | Gossman et al. | |
| 5,335,011 A | 8/1994 | Addeo et al. | |
| 5,348,124 A | 9/1994 | Harper | |
| 5,353,347 A | 10/1994 | Irissou et al. | |
| 5,353,376 A | 10/1994 | Oh et al. | |
| 5,361,303 A | 11/1994 | Eatwell | |
| 5,365,594 A | 11/1994 | Ross et al. | |
| 5,375,174 A | 12/1994 | Denenberg | |
| 5,381,473 A | 1/1995 | Andrea et al. | |
| 5,381,481 A | 1/1995 | Gammie et al. | |
| 5,384,843 A | 1/1995 | Masuda et al. | |
| 5,402,497 A | 3/1995 | Nishimoto et al. | |
| 5,412,735 A | 5/1995 | Engebretson et al. | |
| 5,414,769 A | 5/1995 | Gattey et al. | |
| 5,414,775 A | 5/1995 | Scribner et al. | |
| 5,416,845 A | 5/1995 | Shen | |
| 5,416,847 A | 5/1995 | Boze | |
| 5,416,887 A | 5/1995 | Shimada | |
| 5,418,857 A | 5/1995 | Eatwell | |
| 5,423,523 A | 6/1995 | Gossman et al. | |
| 5,431,008 A | 7/1995 | Ross et al. | |
| 5,432,859 A | 7/1995 | Yang et al. | |
| 5,434,925 A | 7/1995 | Nadim | |
| 5,440,642 A | 8/1995 | Denenberg et al. | |
| 5,448,637 A | 9/1995 | Yamaguchi et al. | |
| 5,452,361 A | 9/1995 | Jones | |
| 5,457,749 A | 10/1995 | Cain et al. | |
| 5,469,087 A | 11/1995 | Eatwell | |
| 5,471,106 A | 11/1995 | Curtis et al. | |
| 5,471,538 A | 11/1995 | Sasaki et al. | |
| 5,473,214 A | 12/1995 | Hildebrand | |
| 5,473,701 A | 12/1995 | Cezanne et al. | |
| 5,473,702 A | 12/1995 | Yoshida et al. | |
| 5,475,761 A | 12/1995 | Eatwell | |
| 5,479,562 A  * | 12/1995 | Fielder et al. ............... 704/229 | |
| 5,481,615 A | 1/1996 | Eatwell et al. | |
| 5,485,515 A | 1/1996 | Allen et al. | |
| 5,493,615 A | 2/1996 | Burke et al. | |
| 5,502,869 A | 4/1996 | Smith et al. | |
| 5,511,127 A | 4/1996 | Warnaka | |
| 5,511,128 A | 4/1996 | Lindeman | |
| 5,515,378 A | 5/1996 | Roy, III et al. | |
| 5,524,056 A | 6/1996 | Killion et al. | |
| 5,524,057 A | 6/1996 | Akiho et al. | |
| 5,526,432 A | 6/1996 | Denenberg | |
| 5,546,090 A | 8/1996 | Roy, III et al. | |
| 5,546,467 A | 8/1996 | Denenberg | |
| 5,550,334 A | 8/1996 | Langley | |
| 5,553,153 A | 9/1996 | Eatwell | |
| 5,563,817 A | 10/1996 | Ziegler et al. | |
| 5,568,557 A | 10/1996 | Ross et al. | |
| 5,581,620 A | 12/1996 | Brandstein et al. | |
| 5,592,181 A | 1/1997 | Cai et al. | |
| 5,592,490 A | 1/1997 | Barratt et al. | |
| 5,600,106 A | 2/1997 | Langley | |
| 5,604,813 A | 2/1997 | Evans et al. | |
| 5,615,175 A | 3/1997 | Cater et al. | |
| 5,617,479 A | 4/1997 | Hildebrand et al. | |
| 5,619,020 A | 4/1997 | Jones et al. | |
| 5,621,656 A | 4/1997 | Langley | |
| 5,625,697 A | 4/1997 | Bowen et al. | |
| 5,625,880 A | 4/1997 | Goldburg et al. | |
| 5,627,746 A | 5/1997 | Ziegler, Jr. et al. | |
| 5,627,799 A | 5/1997 | Hoshuyama | |
| 5,638,022 A | 6/1997 | Eatwell | |
| 5,638,454 A | 6/1997 | Jones et al. | |
| 5,638,456 A | 6/1997 | Conley et al. | |
| 5,642,353 A | 6/1997 | Roy, III et al. | |

| | | | |
|---|---|---|---|
| 5,644,641 A | 7/1997 | Ikeda | |
| 5,649,018 A | 7/1997 | Gifford et al. | |
| 5,652,770 A | 7/1997 | Eatwell | |
| 5,652,799 A | 7/1997 | Ross et al. | |
| 5,657,393 A | 8/1997 | Crow | |
| 5,664,021 A | 9/1997 | Chu et al. | |
| 5,668,747 A | 9/1997 | Obashi | |
| 5,668,927 A  * | 9/1997 | Chan et al. ................. 704/240 | |
| 5,673,325 A | 9/1997 | Andrea et al. | |
| 5,676,353 A | 10/1997 | Jones et al. | |
| 5,689,572 A | 11/1997 | Ohki et al. | |
| 5,692,053 A | 11/1997 | Fuller et al. | |
| 5,692,054 A | 11/1997 | Parrella et al. | |
| 5,699,436 A | 12/1997 | Claybaugh et al. | |
| 5,701,344 A | 12/1997 | Wakui | |
| 5,706,394 A  * | 1/1998 | Wynn .......................... 704/219 | |
| 5,715,319 A | 2/1998 | Chu | |
| 5,715,321 A | 2/1998 | Andrea et al. | |
| 5,719,945 A | 2/1998 | Fuller et al. | |
| 5,724,270 A | 3/1998 | Posch | |
| 5,727,073 A | 3/1998 | Ikeda | |
| 5,732,143 A | 3/1998 | Andrea et al. | |
| 5,745,581 A | 4/1998 | Eatwell et al. | |
| 5,748,749 A | 5/1998 | Miller et al. | |
| 5,768,473 A | 6/1998 | Eatwell et al. | |
| 5,774,859 A | 6/1998 | Houser et al. | |
| 5,787,259 A  * | 7/1998 | Haroun et al. .............. 709/253 | |
| 5,798,983 A | 8/1998 | Kuhn et al. | |
| 5,812,682 A | 9/1998 | Ross et al. | |
| 5,815,582 A | 9/1998 | Claybaugh et al. | |
| 5,818,948 A  * | 10/1998 | Gulick ......................... 381/77 | |
| 5,825,897 A | 10/1998 | Andrea et al. | |
| 5,825,898 A | 10/1998 | Marash | |
| 5,828,768 A | 10/1998 | Eatwell et al. | |
| 5,835,608 A | 11/1998 | Warnaka et al. | |
| 5,838,805 A | 11/1998 | Warnaka et al. | |
| 5,874,918 A | 3/1999 | Czarnecki et al. | |
| 5,909,495 A | 6/1999 | Andrea | |
| 5,914,877 A  * | 6/1999 | Gulick .................. 364/400.01 | |
| 5,914,912 A | 6/1999 | Yang | |
| 5,995,150 A  * | 11/1999 | Hsieh et al. ................. 348/409 | |

FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| EP | 0 583 900 A1 | 2/1994 | |
| EP | 0 595 457 A1 | 5/1994 | |
| EP | 0 721 251 | 7/1996 | |
| EP | 0 724 415 | 11/1996 | |
| FR | 2305909 | 10/1976 | |
| GB | 1 160 431 | 8/1969 | |
| GB | 1 289 993 | 9/1972 | |
| GB | 1 378 294 | 12/1974 | |
| GB | 2 172 769 A | 9/1986 | |
| GB | 2 239 971 B | 7/1991 | |
| GB | 2 289 593 A | 11/1995 | |
| JP | 56-89194 | 7/1981 | |
| JP | 59-64994 | 4/1984 | |
| JP | 62-189898 | 8/1987 | |
| JP | 1-149695 | 6/1989 | |
| JP | 1-314098 | 12/1989 | |
| JP | 2-070152 | 3/1990 | |
| JP | 3-169199 | 7/1991 | |
| JP | 3-231599 | 10/1991 | |
| JP | 4-16900 | 1/1992 | |
| WO | WO 88/09512 | 12/1988 | |
| WO | WO 92/05538 | 4/1992 | |
| WO | WO 92/17019 | 10/1992 | |
| WO | WO 94/16517 | 7/1994 | |
| WO | WO 95/08906 | 3/1995 | |
| WO | WO 96/15541 | 5/1996 | |
| WO | WO 97/23068 | 6/1997 | |

Petitioner Apple Inc.
Ex. 1001, p. 3

## OTHER PUBLICATIONS

Edward J. Foster, "Switched on Silence", Popular Science, 1994, p. 33.

Kuo, *Automatic Control of Systems*, pp. 504–585.

Luenberger, *Optimization by Vector Space Method*, pp. 134–138.

Ogata, *Modern Control Engineering*, pp. 474–508.

Oppenheim Schafer, *Digital Signal Processing* (Prentice Hall) pp. 542–545.

P.P. Vaidyanathan, "Multirate Digital Filters, Filter Banks, Polyphase Networks, and Applications; A Tutorial," IEEE Proc., vol. 78, No. 1, Jan. 1990.

P.P. Vaidyanathan, "Quadrature Mirror Filter Banks, M–band Extensions and Perfect–Reconstruction Techniques," IEEE ASSP Magazine, Jul. 1987, pp. 4–20.

Rabiner et al., IEEE Trans. on Acous., vol. ASSP–24, No. 5, Oct. 1976, pp. 399–418.

Rubiner et al., *Digital Processing of Speech Signals* (Prentice Hall, 1978) pp. 130–135.

Sapontis, *Probability, Lambda Variables and Structural Processes*, pp. 467–474.

Scott C. Douglas, "A Family of Normalized LMS Algorithms," IEEE Signal Proc. Letters, vol. 1, No. 3, Mar. 1994.

Sewald et al., "Application of . . . Beamforming to Reject Turbulence Noise in Airducts," IEEE ICASSP vol. 5, No. CONF–21, May 7, 1996, pp. 2734–2737.

White, *Moving–Coil Earphone Design*, 1963, pp. 188–194.

Widrow et al., "Adaptive Noise Canceling: Principles and Applications," Proc. IEEE, vol. 63, No. 12, Dec. 1975, pp. 1692–1716.

Youla et al., IEEE Trans. on Acous., vol. MI–1, No. 2, Oct. 1982, pp. 81–101.

* cited by examiner

Petitioner Apple Inc.
Ex. 1001, p. 4

Case: 23-1454     Document: 13     Page: 104     Filed: 05/31/2023



Spectral Subtraction System

**FIG. 1**

Petitioner Apple Inc.
Ex. 1001, p. 5

Case: 23-1454     Document: 13     Page: 105     Filed: 05/31/2023



Noise Processing
**FIG. 2**

Petitioner Apple Inc.
Ex. 1001, p. 6

Case: 23-1454    Document: 13    Page: 106    Filed: 05/31/2023



Noise Estimation Process

**FIG. 3**

Petitioner Apple Inc.
Ex. 1001, p. 7

Case: 23-1454    Document: 13    Page: 107    Filed: 05/31/2023



Subtraction Process
**FIG. 4**

Petitioner Apple Inc.
Ex. 1001, p. 8



Residual Noise Process
**FIG. 5**

Petitioner Apple Inc.
Ex. 1001, p. 9



Residual Noise Process Alternative

**FIG. 5A**

Petitioner Apple Inc.
Ex. 1001, p. 10



**FIG. 6**

Petitioner Apple Inc.
Ex. 1001, p. 11



**FIG. 7**

Petitioner Apple Inc.
Ex. 1001, p. 12



**FIG. 8**

Petitioner Apple Inc.
Ex. 1001, p. 13



**FIG. 9**

Petitioner Apple Inc.
Ex. 1001, p. 14

US 6,363,345 B1

1

# SYSTEM, METHOD AND APPARATUS FOR CANCELLING NOISE

## RELATED APPLICATIONS INCORPORATED BY REFERENCE

The following applications and patent(s) are cited and hereby herein incorporated by reference: U.S. patent Ser. No. 09/130,923 filed Aug. 6, 1998, U.S. patent Ser. No. 09/055,709 filed Apr. 7, 1998, U.S. patent Ser. No. 09/059, 503 filed Apr. 13, 1998, U.S. patent Ser. No. 08/840,159 filed Apr. 14, 1997, U.S. patent Ser. No. 09/130,923 filed Aug. 6, 1998, U.S. patent Ser. No. 08/672,899 now issued U.S. Pat. No. 5,825,898 issued Oct. 20, 1998. And, all documents cited herein are incorporated herein by reference, as are documents cited or referenced in documents cited herein.

## FIELD OF THE INVENTION

The present invention relates to noise cancellation and reduction and, more specifically, to noise cancellation and reduction using spectral subtraction.

## BACKGROUND OF THE INVENTION

Ambient noise added to speech degrades the performance of speech processing algorithms. Such processing algorithms may include dictation, voice activation, voice compression and other systems. In such systems, it is desired to reduce the noise and improve the signal to noise ratio (S/N ratio) without effecting the speech and its characteristics.

Near field noise canceling microphones provide a satisfactory solution but require that the microphone in the proximity of the voice source (e.g., mouth). In many cases, this is achieved by mounting the microphone on a boom of a headset which situates the microphone at the end of a boom proximate the mouth of the wearer. However, the headset has proven to be either uncomfortable to wear or too restricting for operation in, for example, an automobile.

Microphone array technology in general, and adaptive beamforming arrays in particular, handle severe directional noises in the most efficient way. These systems map the noise field and create nulls towards the noise sources. The number of nulls is limited by the number of microphone elements and processing power. Such arrays have the benefit of hands-free operation without the necessity of a headset.

However, when the noise sources are diffused, the performance of the adaptive system will be reduced to the performance of a regular delay and sum microphone array, which is not always satisfactory. This is the case where the environment is quite reverberant, such as when the noises are strongly reflected from the walls of a room and reach the array from an infinite number of directions. Such is also the case in a car environment for some of the noises radiated from the car chassis.

## OBJECTS AND SUMMARY OF THE INVENTION

The spectral subtraction technique provides a solution to further reduce the noise by estimating the noise magnitude spectrum of the polluted signal. The technique estimates the magnitude spectral level of the noise by measuring it during non-speech time intervals detected by a voice switch, and then subtracting the noise magnitude spectrum from the signal. This method, described in detail in Suppression of Acoustic Noise in Speech Using Spectral Subtraction, (Steven F Boll, IEEE ASSP-27 NO.2 April, 1979), achieves good results for stationary diffused noises that are not

2

correlated with the speech signal. The spectral subtraction method, however, creates artifacts, sometimes described as musical noise, that may reduce the performance of the speech algorithm (such as vocoders or voice activation) if the spectral subtraction is uncontrolled. In addition, the spectral subtraction method assumes erroneously that the voice switch accurately detects the presence of speech and locates the non-speech time intervals. This assumption is reasonable for off-line systems but difficult to achieve or obtain in real time systems.

More particularly, the noise magnitude spectrum is estimated by performing an FFT of 256 points of the non-speech time intervals and computing the energy of each frequency bin. The FFT is performed after the time domain signal is multiplied by a shading window (Hanning or other) with an overlap of 50%. The energy of each frequency bin is averaged with neighboring FFT time frames. The number of frames is not determined but depends on the stability of the noise. For a stationary noise, it is preferred that many frames are averaged to obtain better noise estimation. For a non-stationary noise, a long averaging may be harmful. Problematically, there is no means to know a-priori whether the noise is stationary or non-stationary.

Assuming the noise magnitude spectrum estimation is calculated, the input signal is multiplied by a shading window (Hanning or other), an FFT is performed (256 points or other) with an overlap of 50% and the magnitude of each bin is averaged over 2–3 FFT frames. The noise magnitude spectrum is then subtracted from the signal magnitude. If the result is negative, the value is replaced by a zero (Half Wave Rectification). It is recommended, however, to further reduce the residual noise present during non-speech intervals by replacing low values with a minimum value (or zero) or by attenuating the residual noise by 30 dB. The resulting output is the noise free magnitude spectrum.

The spectral complex data is reconstructed by applying the phase information of the relevant bin of the signal's FFT with the noise free magnitude. An IFFT process is then performed on the complex data to obtain the noise free time domain data. The time domain results are overlapped and summed with the previous frame's results to compensate for the overlap process of the FFT.

There are several problems associated with the system described. First, the system assumes that there is a prior knowledge of the speech and non-speech time intervals. A voice switch is not practical to detect those periods. Theoretically, a voice switch detects the presence of speech by measuring the energy level and comparing it to a threshold. If the threshold is too high, there is a risk that some voice time intervals might be regarded as a non-speech time interval and the system will regard voice information as noise. The result is voice distortion, especially in poor signal to noise ratio cases. If, on the other hand, the threshold is too low, there is a risk that the non-speech intervals will be too short especially in poor signal to noise ratio cases and in cases where the voice is continuous with little intermission.

Another problem is that the magnitude calculation of the FFT result is quite complex. This involves square and square root calculations which are very expensive in terms of computation load. Yet another problem is the association of the phase information to the noise free magnitude spectrum in order to obtain the information for the IFFT. This process requires the calculation of the phase, the storage of the information, and applying the information to the magnitude data—all are expensive in terms of computation and

Petitioner Apple Inc.
Ex. 1001, p. 15

US 6,363,345 B1

| 3 | 4 |

memory requirements. Another problem is the estimation of the noise spectral magnitude. The FFT process is a poor and unstable estimator of energy. The averaging-over-time of frames contributes insufficiently to the stability. Shortening the length of the FFT results in a wider bandwidth of each bin and better stability but reduces the performance of the system. Averaging-over-time, moreover, smears the data and, for this reason, cannot be extended to more than a few frames. This means that the noise estimation process proposed is not sufficiently stable.

It is therefore an object of this invention to provide a spectral subtraction system that has a simple, yet efficient mechanism, to estimate the noise magnitude spectrum even in poor signal-to-noise ratio situations and in continuous fast speech cases.

It is another object of this invention to provide an efficient mechanism that can perform the magnitude estimation with little cost, and will overcome the problem of phase association.

It is yet another object of this invention to provide a stable mechanism to estimate the noise spectral magnitude without the smearing of the data.

In accordance with the foregoing objectives, the present invention provides a system that correctly determines the non-speech segments of the audio signal thereby preventing erroneous operation of the noise canceling signal during the speech segments. In the preferred embodiment, the present invention obviates the need for a voice switch by precisely determining the non-speech segments using a separate threshold detector for each frequency bin. The threshold detector precisely detects the positions of the noise elements, even within continuous speech segments, by determining whether frequency spectrum elements, or bins, of the input signal are within a threshold set according to a minimum value of the frequency spectrum elements over a preset period of time. More precisely, current and future minimum values of the frequency spectrum elements. Thus, for each syllable, the energy of the noise elements is determined by a separate threshold determination without examination of the overall signal energy thereby providing good and stable estimation of the noise. In addition, the system preferably sets the threshold continuously and resets the threshold within a predetermined period of time of, for example, five seconds.

In order to reduce complex calculations, it is preferred in the present invention to obtain an estimate of the magnitude of the input audio signal using a multiplying combination of the real and imaginary parts of the input in accordance with, for example, the higher and the lower values of the real and imaginary parts of the signal. In order to further reduce instability of the spectral estimation, a two-dimensional (2D) smoothing process is applied to the signal estimation. A two-step smoothing function using first neighboring frequency bins in each time frame then applying an exponential time average effecting an average over time for each frequency bin produces excellent results.

In order to reduce the complexity of determining the phase of the frequency bins during subtraction to thereby align the phases of the subtracting elements, the present invention applies a filter multiplication to effect the subtraction. The filter function, a Weiner filter function for example, or an approximation of the Weiner filter is multiplied by the complex data of the frequency domain audio signal. The filter function may effect a full-wave rectification, or a half-wave rectification for otherwise negative results of the subtraction process or simple subtraction. It will be appre-

ciated that, since the noise elements are determined within continuous speech segments, the noise estimation is accurate and it may be canceled from the audio signal continuously providing excellent noise cancellation characteristics.

The present invention also provides a residual noise reduction process for reducing the residual noise remaining after noise cancellation. The residual noise is reduced by zeroing the non-speech segments, e.g., within the continuous speech, or decaying the non-speech segments. A voice switch may be used or another threshold detector which detects the non-speech segments in the time-domain.

The present invention is applicable with various noise canceling systems including, but not limited to, those systems described in the U.S. patent applications incorporated herein by reference. The present invention, for example, is applicable with the adaptive beamforming array. In addition, the present invention may be embodied as a computer program for driving a computer processor either installed as application software or as hardware.

BRIEF DESCRIPTION OF THE DRAWINGS

Other objects, features and advantages according to the present invention will become apparent from the following detailed description of the illustrated embodiments when read in conjunction with the accompanying drawings in which corresponding components are identified by the same reference numerals.

FIG. 1 illustrates the present invention;

FIG. 2 illustrates the noise processing of the present invention;

FIG. 3 illustrates the noise estimation processing of the present invention;

FIG. 4 illustrates the subtraction processing of the present invention;

FIG. 5 illustrates the residual noise processing of the present invention;

FIG. 5A illustrates a variant of the residual noise processing of the present invention;

FIG. 6 illustrates a flow diagram of the present invention;

FIG. 7 illustrates a flow diagram of the present invention;

FIG. 8 illustrates a flow diagram of the present invention; and

FIG. 9 illustrates a flow diagram of the present invention.

DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS

FIG. 1 illustrates an embodiment of the present invention 100. The system receives a digital audio signal at input 102 sampled at a frequency which is at least twice the bandwidth of the audio signal. In one embodiment, the signal is derived from a microphone signal that has been processed through an analog front end, A/D converter and a decimation filter to obtain the required sampling frequency. In another embodiment, the input is taken from the output of a beamformer or even an adaptive beamformer. In that case the signal has been processed to eliminate noises arriving from directions other than the desired one leaving mainly noises originated from the same direction of the desired one. In yet another embodiment, the input signal can be obtained from a sound board when the processing is implemented on a PC processor or similar computer processor.

The input samples are stored in a temporary buffer 104 of 256 points. When the buffer is full, the new 256 points are combined in a combiner 106 with the previous 256 points to

Petitioner Apple Inc.
Ex. 1001, p. 16

US 6,363,345 B1

5

provide 512 input points. The 512 input points are multiplied by multiplier **108** with a shading window with the length of 512 points. The shading window contains coefficients that are multiplied with the input data accordingly. The shading window can be Hanning or other and it serves two goals: the first is to smooth the transients between two processed blocks (together with the overlap process); the second is to reduce the side lobes in the frequency domain and hence prevent the masking of low energy tonals by high energy side lobes. The shaded results are converted to the frequency domain through an FFT (Fast Fourier Transform) processor **110**. Other lengths of the FFT samples (and accordingly input buffers) are possible including 256 points or 1024 points.

The FFT output is a complex vector of 256 significant points (the other 256 points are an anti-symmetric replica of the first 256 points). The points are processed in the noise processing block **112(200)** which includes the noise magnitude estimation for each frequency bin—the subtraction process that estimates the noise-free complex value for each frequency bin and the residual noise reduction process. An IFFT (Inverse Fast Fourier Transform) processor **114** performs the Inverse Fourier Transform on the complex noise free data to provide 512 time domain points. The first 256 time domain points are summed by the summer **116** with the previous last 256 data points to compensate for the input overlap and shading process and output at output terminal **118**. The remaining 256 points are saved for the next iteration.

It will be appreciated that, while specific transforms are utilized in the preferred embodiments, it is of course understood that other transforms may be applied to the present invention to obtain the spectral noise signal.

FIG. 2 is a detailed description of the noise processing block **200(112)**. First, each frequency bin (n) **202** magnitude is estimated. The straight forward approach is to estimate the magnitude by calculating:

$$Y(n) = ((\text{Real}(n))^2 + (\text{Imag}(n))^2)^{-2}$$

In order to save processing time and complexity the signal magnitude (Y) is estimated by an estimator **204** using an approximation formula instead:

$$Y(n) = \text{Max}[|\text{Real}(n), \text{Imag}(n)|] + 0.4 \cdot \text{Min}[|\text{Real}(n), \text{Imag}(n)|]$$

In order to reduce the instability of the spectral estimation, which typically plagues the FFT Process (ref[2] Digital Signal Processing, Oppenheim Schafer, Prentice Hall P. 542545), the present invention implements a 2D smoothing process. Each bin is replaced with the average of its value and the two neighboring bins' value (of the same time frame) by a first averager **206**. In addition, the smoothed value of each smoothed bin is further smoothed by a second averager **208** using a time exponential average with a time constant of 0.7 (which is the equivalent of averaging over 3 time frames). The 2D-smoothed value is then used by two processes—the noise estimation process by noise estimation processor **212(300)** and the subtraction process by subtractor **210**. The noise estimation process estimates the noise at each frequency bin and the result is used by the noise subtraction process. The output of the noise subtraction is fed into a residual noise reduction processor **216** to further reduce the noise. In one embodiment, the time domain signal is also used by the residual noise process **216** to determine the speech free segments. The noise free signal is moved to the IFFT process to obtain the time domain output **218**.

FIG. 3 is a detailed description of the noise estimation processor **300(212)**. Theoretically, the noise should be esti-

6

mated by taking a long time average of the signal magnitude (Y) of non-speech time intervals. This requires that a voice switch be used to detect the speech/non-speech intervals. However, a too-sensitive a switch may result in the use of a speech signal for the noise estimation which will defect the voice signal. A less sensitive switch, on the other hand, may dramatically reduce the length of the noise time intervals (especially in continuous speech cases) and defect the validity of the noise estimation.

In the present invention, a separate adaptive threshold is implemented for each frequency bin **302**. This allows the location of noise elements for each bin separately without the examination of the overall signal energy. The logic behind this method is that, for each syllable, the energy may appear at different frequency bands. At the same time, other frequency bands may contain noise elements. It is therefore possible to apply a non-sensitive threshold for the noise and yet locate many non-speech data points for each bin, even within a continuous speech case. The advantage of this method is that it allows the collection of many noise segments for a good and stable estimation of the noise, even within continuous speech segments.

In the threshold determination process, for each frequency bin, two minimum values are calculated. A future minimum value is initiated every 5 seconds at **304** with the value of the current magnitude (Y(n)) and replaced with a smaller minimal value over the next 5 seconds through the following process. The future minimum value of each bin is compared with the current magnitude value of the signal. If the current magnitude is smaller than the future minimum, the future minimum is replaced with the magnitude which becomes the new future minimum.

At the same time, a current minimum value is calculated at **306**. The current minimum is initiated every 5 seconds with the value of the future minimum that was determined over the previous 5 seconds and follows the minimum value of the signal for the next 5 seconds by comparing its value with the current magnitude value. The current minimum value is used by the subtraction process, while the future minimum is used for the initiation and refreshing of the current minimum.

The noise estimation mechanism of the present invention ensures a tight and quick estimation of the noise value, with limited memory of the process (5 seconds), while preventing a too high an estimation of the noise.

Each bin's magnitude (Y(n)) is compared with four times the current minimum value of that bin by comparator **308**—which serves as the adaptive threshold for that bin. If the magnitude is within the range (hence below the threshold), it is allowed as noise and used by an exponential averaging unit **310** that determines the level of the noise **312** of that frequency. If the magnitude is above the threshold it is rejected for the noise estimation. The time constant for the exponential averaging is typically 0.95 which may be interpreted as taking the average of the last 20 frames. The threshold of 4*minimum value may be changed for some applications.

FIG. 4 is a detailed description of the subtraction processor **400(210)**. In a straight forward approach, the value of the estimated bin noise magnitude is subtracted from the current bin magnitude. The phase of the current bin is calculated and used in conjunction with the result of the subtraction to obtain the Real and Imaginary parts of the result. This approach is very expensive in terms of processing and memory because it requires the calculation of the Sine and Cosine arguments of the complex vector with consideration of the 4 quarters where the complex vector may be posi-

Petitioner Apple Inc.
Ex. 1001, p. 17

US 6,363,345 B1

7

tioned. An alternative approach used in this present invention is to use a Filter approach. The subtraction is interpreted as a filter multiplication performed by filter **402** where H (the filter coefficient) is:

$$H(n) = \frac{||Y(n)| - |N(n)||}{|Y(n)|}$$

Where Y(n) is the magnitude of the current bin and N(n) is the noise estimation of that bin. The value H of the filter coefficient (of each bin separately) is multiplied by the Real and Imaginary parts of the current bin at **404**:

$$E(\text{Real}) = Y(\text{Real})*H; E(\text{Imag}) = Y(\text{Imag})*H$$

Where E is the noise free complex value. In the straight forward approach the subtraction may result in a negative value of magnitude. This value can be either replaced with zero (half-wave rectification) or replaced with a positive value equal to the negative one (full-wave rectification). The filter approach, as expressed here, results in the full-wave rectification directly. The full wave rectification provides a little less noise reduction but introduces much less artifacts to the signal. It will be appreciated that this filter can be modified to effect a half-wave rectification by taking the non-absolute value of the numerator and replacing negative values with zeros.

Note also that the values of Y in the figures are the smoothed values of Y after averaging over neighboring spectral bins and over time frames (2D smoothing). Another approach is to use the smoothed Y only for the noise estimation (N), and to use the unsmoothed Y for the calculation of H.

FIG. **5** illustrates the residual noise reduction processor **500**(**216**). The residual noise is defined as the remaining noise during non-speech intervals. The noise in these intervals is first reduced by the subtraction process which does not differentiate between speech and non-speech time intervals. The remaining residual noise can be reduced further by using a voice switch **502** and either multiplying the residual noise by a decaying factor or replacing it with zeros. Another alternative to the zeroing is replacing the residual noise with a minimum value of noise at **504**.

Yet another approach, which avoids the voice switch, is illustrated in FIG. **5A**. The residual noise reduction processor **506** applies a similar threshold used by the noise estimator at **508** on the noise free output bin and replaces or decays the result when it is lower than the threshold at **510**.

The result of the residual noise processing of the present invention is a quieter sound in the non-speech intervals. However, the appearance of artifacts such as a pumping noise when the noise level is switched between the speech interval and the non-speech interval may occur in some applications.

The spectral subtraction technique of the present invention can be utilized in conjunction with the array techniques, close talk microphone technique or as a stand alone system. The spectral subtraction of the present invention can be implemented on an embedded hardware (DSP) as a stand alone system, as part of other embedded algorithms such as adaptive beamforming, or as a software application running on a PC using data obtained from a sound port.

As illustrated in FIGS. **6–9**, for example, the present invention may be implemented as a software application. In step **600**, the input samples are read. At step **602**, the read samples are stored in a buffer. If 256 new points are accumulated in step **604**, program control advances to step

8

**606**—otherwise control returns to step **600** where additional samples are read. Once 256 new samples are read, the last 512 points are moved to the processing buffer in step **606**. The 256 new samples stored are combined with the previous 256 points in step **608** to obtain the 512 points. In step **610**, a Fourier Transform is performed on the 512 points. Of course, another transform may be employed to obtain the spectral noise signal. In step **612**, the 256 significant complex points resulting from the transformation are stored in the buffer. The second 256 points are a conjugate replica of the first 256 points and are redundant for real inputs. The stored data in step **614** includes the 256 real points and the 256 imaginary points. Next, control advances to FIG. **7** as indicated by the circumscribed letter A.

In FIG. **7**, the noise processing is performed wherein the magnitude of the signal is estimated in step **700**. Of course, the straight forward approach may be employed but, as discussed with reference to FIG. **2**, the straight forward approach requires extraneous processing time and complexity. In step **702**, the stored complex points are read from the buffer and calculated using the estimation equation shown in step **700**. The result is stored in step **704**. A 2-dimensional (2D) smoothing process is effected in steps **706** and **708** wherein, in step **706**, the estimate at each point is averaged with the estimates of adjacent points and, in step **708**, the estimate is averaged using an exponential average having the effect of averaging the estimate at each point over, for example, 3 time samples of each bin. In steps **710** and **712**, the smoothed estimate is employed to determine the future minimum value and the current minimum value. If the smoothed estimate is less than the calculated future minimum value as determined in step **710**, the future minimum value is replaced with the smoothed estimate and stored in step **714**.

Meanwhile, if it is determined at step **712** that the smoothed estimate is less than the current minimum value, then the current minimum is replaced with the smoothed estimate value and stored in step **720**. The future and current minimum values are calculated continuously and initiated periodically, for example, every 5 seconds as determined in step **724** and control is advanced to steps **722** and **726** wherein the new future and current minimum are calculated. Afterwards, control advances to FIG. **8** as indicated by the circumscribed letter B where the subtraction and residual noise reduction are effected.

In FIG. **8**, it is determined whether the samples are less than a threshold amount in step **800**. In step **804**, where the samples are within the threshold, the samples undergo an exponential averaging and stored in the buffer at step **802**. Otherwise, control advances directly to step **808**. At step **808**, the filter coefficients are determined from the signal samples retrieved in step **806** the samples retrieved from step **810** is determined from the signal samples retrieved in step **806** and the estimated samples retrieved from step **810**. Although the straight forward approach may be used by which phase is estimated and applied, the alternative Weiner Filter is preferred since this saves processing time and complexity. In step **814**, the filter transform is multiplied by the samples retrieved from steps **816** and stored in step **812**.

In steps **818** and **820**, the residual noise reduction process is performed wherein, in step **818**, if the processed noise signal is within a threshold, control advances to step **820** wherein the processed noise is subjected to replacement, for example, a decay. However, the residual noise reduction process may not be suitable in some applications where the application is negatively effected.

It will be appreciated that, while specific values are used as in the several equations and calculations employed in the present invention, these values may be different than those shown.

Petitioner Apple Inc.
Ex. 1001, p. 18

US 6,363,345 B1

**9**

In FIG. **9**, the Inverse Fourier Transform is generated in step **902** on the basis of the recovered noise processed audio signal recovered in step **904** and stored in step **900**. In step **906**, the time-domain signals are overlayed in order to regenerate the audio signal substantially without noise.

It will be appreciated that the present invention may be practiced as a software application, preferably written using C or any other programming language, which may be embedded on, for example, a programmable memory chip or stored on a computer-readable medium such as, for example, an optical disk, and retrieved therefrom to drive a computer processor. Sample code representative of the present invention is illustrated in Appendix A which, as will be appreciated by those skilled in the art, may be modified to accommodate various operating systems and compilers or to include various bells and whistles without departing from the spirit and scope of the present invention.

With the present invention, a spectral subtraction system is provided that has a simple, yet efficient mechanism, to estimate the noise magnitude spectrum even in poor signal to noise ratio situations and in continuous fast speech cases. An efficient mechanism is provided that can perform the magnitude estimation with little cost, and will overcome the problem of phase association. A stable mechanism is provided to estimate the noise spectral magnitude without the smearing of the data.

Although preferred embodiments of the present invention and modifications thereof have been described in detail herein, it is to be understood that this invention is not limited to those precise embodiments and modifications, and that other modifications and variations may be affected by one skilled in the art without departing from the spirit and scope of the invention as defined by the appended claims.

What is claimed is:

**1**. An apparatus for canceling noise, comprising:

an input for inputting an audio signal which includes a noise signal;

a frequency spectrum generator for generating the frequency spectrum of said audio signal thereby generating frequency bins of said audio signal; and

a threshold detector for setting a threshold for each frequency bin using a noise estimation process and for detecting for each frequency bin whether the magnitude of the frequency bin is less than the corresponding threshold, thereby detecting the position of noise elements for each frequency bin.

**2**. The apparatus according to claim **1**, wherein said threshold detector detects the position of a plurality of non-speech data points for said frequency bins.

**3**. The apparatus according to claim **2**, wherein said threshold detector detects the position of said plurality of non-speech data points for said frequency bins within a continuous speech segment of said audio signal.

**4**. The apparatus according to claim **1**, wherein said threshold detector sets the threshold for each frequency bin in accordance with a current minimum value of the magnitude of the corresponding frequency bin; said current minimum value being derived in accordance with a future minimum value of the magnitude of the corresponding frequency bin.

**5**. The apparatus according to claim **4**, wherein said future minimum value is determined as the minimum value of the magnitude of the corresponding frequency bin within a predetermined period of time.

**6**. The apparatus according to claim **5**, wherein said current minimum value is set to said future minimum value periodically.

**10**

**7**. The apparatus according to claim **6**, wherein said future minimum value is replaced with the current minimum value when said future minimum value is greater than said current magnitude value.

**8**. The apparatus according to claim **6**, wherein said current minimum value is replaced with the current magnitude value when said current minimum value is greater than said current magnitude value.

**9**. The apparatus according to claim **5**, wherein said future minimum value is set to a current magnitude value periodically; said current-magnitude value being the value of the magnitude of the corresponding frequency bin.

**10**. The apparatus according to claim **4**, wherein said current minimum value is determined as the minimum value of the magnitude of the corresponding frequency bin within a predetermined period of time.

**11**. The apparatus according to claim **4**, wherein said threshold is set by multiplying said current minimum value by a coefficient.

**12**. The apparatus according to claim **1**, further comprising an averaging unit for determining a level of said noise within said respective frequency bin, wherein said threshold detector detects the position of said noise elements where said level of said noise determined by said averaging unit is less than the corresponding threshold.

**13**. The apparatus according to claim **1**, further comprising a subtractor for subtracting said noise elements estimated at said positions determined by said threshold detector from said audio signal to derive said audio signal substantially without said noise.

**14**. The apparatus according to claim **13**, wherein said subtractor performs subtraction using a filter multiplication which multiplies said audio signal by a filter function.

**15**. The apparatus according to claim **14**, wherein said filter function is a Wiener filter function which is a function of said frequency bins of said noise elements and magnitude.

**16**. The apparatus according to claim **15**, wherein said filter multiplication multiplies the complex elements of said frequency bins by said Wiener filter function.

**17**. The apparatus according to claim **13**, further comprising a residual noise processor for reducing residual noise remaining after said subtractor subtracts said noise elements at said positions determined by said threshold detector from said audio signal.

**18**. The apparatus according to claim **17**, wherein said residual noise processor replaces said frequency bins corresponding to non-speech segments of said audio signal with a minimum value.

**19**. The apparatus according to claim **18**, wherein said residual noise processor includes a voice switch for detecting said non-speech segments.

**20**. The apparatus according to claim **18**, wherein said residual noise processor includes another threshold detector for detecting said non-speech segments by detecting said audio signal is below a predetermined threshold.

**21**. The apparatus according to claim **1**, further comprising an estimator for estimating a magnitude of each frequency bin.

**22**. The apparatus according to claim **21**, wherein said estimator estimates said magnitude of each frequency bin as a function of the maximum and the minimum values of the complex element of said frequency bins for a number n of frequency bins.

**23**. The apparatus according to claim **21**, further comprising a smoothing unit which smoothes the estimate of each frequency bin.

**24**. The apparatus according to claim **23**, wherein said smoothing unit comprises a two-dimensional process which

Petitioner Apple Inc.
Ex. 1001, p. 19

US 6,363,345 B1

11

averages each frequency bin in accordance with neighboring frequency bins and averages each frequency bin using an exponential time average which effects an average over a plurality of frequency bins over time.

**25**. The apparatus according to claim **1**, further comprising an adaptive array comprising a plurality of microphones for receiving said audio signal.

**26**. An apparatus for canceling noise, comprising:

input means for inputting an audio signal which includes a noise signal;

frequency spectrum generating means for generating the frequency spectrum of said audio signal thereby generating frequency bins of said audio signal; and

threshold detecting means for setting a threshold for each frequency bin using a noise estimation process and for detecting for each frequency bin whether the magnitude of the frequency bin is less than the corresponding threshold, thereby detecting the position of noise elements for each frequency bin.

**27**. The apparatus according to claim **26**, wherein said threshold detecting means sets the threshold for each frequency bin in accordance with a current minimum value of the magnitude of the corresponding frequency bin; said current minimum value being derived in accordance with a future minimum value of the magnitude of the corresponding frequency bin.

**28**. The apparatus according to claim **27**, wherein said future minimum value is determined as the minimum value of the magnitude of the corresponding frequency bin within a predetermined period of time.

**29**. The apparatus according to claim **27**, wherein said current minimum value is determined as the minimum value of the magnitude of the corresponding frequency bin within a predetermined period of time.

**30**. The apparatus according to claim **26**, further comprising averaging means for determining a level of said noise within said respective frequency bin, wherein said threshold detecting means detects the position of said noise elements where said level of said noise determined by said averaging means is less than the corresponding threshold.

**31**. The apparatus according to claim **26**, further comprising subtracting means for subtracting said noise elements at said positions determined by said threshold detecting means from said audio signal to derive said audio signal substantially without said noise.

**32**. The apparatus according to claim **31**, wherein said subtracting performs subtraction using a filter multiplication which multiplies said audio signal by a filter function.

**33**. The apparatus according to claim **31**, further comprising residual noise processing means for reducing residual noise remaining after said subtracting means subtracts said noise elements at said positions determined by said threshold detecting means from said audio signal.

**34**. The apparatus according to claim **26**, further comprising estimating means for estimating a magnitude of each frequency bin.

**35**. The apparatus according to claim **34**, wherein said estimating means estimates said magnitude of each frequency bin as a function of a maximum and a minimum of said frequency bins for a number n of frequency bins.

**36**. The apparatus according to claim **34**, further comprising smoothing means for smoothing the estimate of each frequency bin.

12

**37**. The apparatus according to claim **26**, further comprising adaptive array means comprising a plurality of microphones for receiving said audio signal.

**38**. A method for driving a computer processor for generating a noise canceling signal for canceling noise from an audio signal representing audible sound including a noise signal representing audible noise, said method comprising the steps of:

inputting said audio signal which includes said noise signal;

generating the frequency spectrum of said audio signal thereby generating frequency bins of said audio signal;

setting a threshold for each frequency bin using a noise estimation process;

detecting for each frequency bin whether the magnitude of the frequency bin is less than the corresponding threshold, thereby detecting the position of noise elements for each frequency bin; and

subtracting said noise elements detected in said step of detecting from said audio signal to produce an audio signal representing said audible sound substantially without said audible noise.

**39**. The method according to claim **38**, wherein said setting step sets the threshold for each frequency bin in accordance with a current minimum value of the magnitude of the corresponding frequency bin; said current minimum value being derived in accordance with a future minimum value of the magnitude of the corresponding frequency bin.

**40**. The method according to claim **39**, wherein said setting step further comprises the step of determining said future minimum value as the minimum value of the magnitude of the corresponding frequency bin within a predetermined period of time.

**41**. The method according to claim **40**, wherein said setting step further comprises the step of determining said future minimum value as the minimum value of the magnitude of the corresponding frequency bin within a predetermined period of time.

**42**. The method according to claim **40**, further comprising the step of averaging a level of said noise of said respective frequency bin, wherein said step of detecting detects the position of said noise elements where said level of said noise determined by said step of averaging is less than the corresponding threshold.

**43**. The method according to claim **40**, wherein said step of subtracting performs subtraction using a filter multiplication which multiplies said audio signal by a filter function.

**44**. The method according to claim **40**, further comprising the step of estimating a magnitude of each frequency bin as a function of a maximum and a minimum of said frequency bins for a number n of frequency bins.

**45**. The method according to claim **44**, further comprising the step of smoothing the estimate of each frequency bin.

**46**. The method according to claim **39**, further comprising the step of receiving said audio signal from an adaptive array of a plurality of microphones.

**47**. The method according to claim **38**, further comprising the step of reducing the residual noise remaining after said step of subtracting subtracts said noise elements at said positions determined by said step of detecting from said audio signal.

* * * * *

Petitioner Apple Inc.
Ex. 1001, p. 20

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

   X    the filing has been prepared using a proportionally-spaced typeface and includes 13,447 words.

_____ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

_____ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date:   May 31, 2023          */s/ William D. Belanger*_____
                              William D. Belanger